Thomas LEWIS, et al.,
Plaintiffs-Appellees,
Cross-Appellants,

v.

J.D. DOWNS and V.W. Geil,
Defendants-Appellants,
Cross-Appellees.

Nos. 84–5738, 84–5739.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 1, 1985.

Decided Oct. 9, 1985.

Eugene C. Gaerig (argued), Memphis, Tenn., for defendants-appellants, cross-appellees.

Donald A. Donati (argued), Donati, Donati, Robbins & Gosnell, Mark Francis, Memphis, Tenn., for plaintiffs-appellees, cross-appellants.

**712**

Before ENGEL and JONES, Circuit Judges and CELEBREZZE, Senior Circuit Judge.

PER CURIAM.

Defendants-Appellants J.D. Downs and V.W. Geil appeal from a decision of the district court finding them liable under Tennessee common law for battery and pursuant to 42 U.S.C. § 1983 (1982) for using unnecessary and excessive force against plaintiffs-appellees Mr. Thomas Lewis, Mrs. Ethel Lewis, and Tony Lewis. Appellants assert on appeal that the evidence produced was insufficient to establish a violation of appellees' due process rights and that the district court erred in awarding punitive damages. We hold that the defendants' conduct, in this case, was sufficiently egregious to constitute a deprivation of due process and that the district court properly exercised its discretion in awarding punitive damages. Accordingly, we affirm.

Neither party disputes the relevant factual findings made by the district court, which are briefly summarized as follows. This case grows out of an unfortunate racial incident. Ethel and Thomas Lewis, both of whom are Caucasian, reside in a neighborhood in which the minority of the residents are white with their two children Tony and Lois. During the afternoon of the day in question, an argument began between Lois and a black neighbor, concerning the place where Mr. Lewis had parked his truck. Although innocuous in its beginnings, this argument continued to escalate to the point where later that afternoon Lois, allegedly because she could not sleep due to the noise, called the Memphis Police Department.

Downs, a reserve police officer, and Geil, a regular police officer, both of whom are white, responded to the call. Upon arriving at the scene, the officers found both the Lewises and numerous neighbors yelling and cursing at each other. Mrs. Ethel Lewis, who by this time was quite agitated, was repeatedly yelling, "Get your guns now. We have got something for you." The officers immediately attempted to discern what had happened and repeatedly asked Mrs. Lewis to stop screaming and cursing. Due to Mrs. Lewis' failure to comply with the officers' requests to quiet down and because Mrs. Lewis' conduct was creating an "inflammable situation," Officer Downs informed Mrs. Lewis that she was under arrest.

In order to effect the arrest, Officer Downs reached over the four foot chain link fence which surrounded the Lewises' home to grab Mrs. Lewis. At this time, the Lewises' dog jumped up and grabbed Officer Downs' arm (Officer Downs' shirt was not ripped nor was his skin broken from this encounter). In response, both officers drew their revolvers and Officer Downs told Mrs. Lewis that if she did not restrain the dog he would kill it, which caused Mrs. Lewis to go into hysterics. Despite Mrs. Lewis' mental condition, she complied with Officer Downs' request and placed the dog inside the Lewises' house. Officer Geil then proceeded into the Lewises' front yard to arrest Mrs. Lewis. Officer Geil gained physical control over Mrs. Lewis near the front porch and by severely twisting her arm, was able to place his handcuffs on her wrists. After Mrs. Lewis was handcuffed, she either slipped due to muddy conditions or was thrown by Officer Geil to the ground.[1] While Mrs. Lewis lay handcuffed and face down on the ground, Officer Geil kicked her in the back and buttocks area.

Tony, in a "foolish" attempt to prevent the apprehension of his mother, started to move towards Officer Downs with an iron rake. Officer Downs responded by drawing his revolver and asking Tony to put down the rake; after three such requests, Tony dropped the rake. Officer Geil then grabbed Tony to effect an arrest of him. In the process of subduing and handcuffing Tony, Officer Geil resorted to pulling

**1.** The district court never explicitly explained how Mrs. Lewis ended up handcuffed and on the ground. Mrs. Lewis alleged that Officer Geil threw her to the ground. In contrast, Officer Geil testified that they both slipped and fell due to the muddy conditions.

Tony's hair, twisting his arm, and placing him in a choke hold. At this time, Mr. Lewis, "in a very foolish manner, commensurate with his physical ... inadequacy," sought to intervene on his son's behalf by grabbing Tony's waist in order to prevent Officer Geil from taking him away. Mr. Thomas Lewis' brother, Eugene Lewis, however, intervened and grabbed Mr. Lewis around his waist and restrained him. While being held by his brother, Mr. Lewis was kicked by Officer Geil in the groin and, simultaneously, struck on the top of his head by Officer Downs with his nightstick. Mr. Lewis immediately went to the ground. Bleeding profusely and on his knees, Mr. Lewis was forced to crawl unaided to the gate. Due to Mr. Lewis' condition, the officers had him taken by ambulance to a hospital where he was diagnosed as suffering a cut to his head with an underlying hematoma.

Following his father's aborted attempt to intervene, Tony Lewis was handcuffed and taken to the police car. While being led away, Officer Geil without justification struck Tony in the mouth with his nightstick. Tony later received several stitches due to the injury to his mouth.

Mr. and Mrs. Lewis were, subsequently, charged with several crimes, including disorderly conduct, assault, and battery. The Lewises were acquitted on all counts. Charges were also filed against Tony, but these were handled in a non-judicial manner by Juvenile Court Officials. Mr., Mrs., and Tony Lewis then brought this action against Officers Geil, Downs, and the City of Memphis. The Lewises alleged that Officers Geil and Downs committed Tennessee common law assault, battery, malicious prosecution, and false imprisonment, deprived them of due process of law under 42 U.S.C. § 1983 (1982), and conspired to deprive them of their civil rights under 42 U.S.C. § 1985 (1982); the Lewises further contended that the City of Memphis' disorderly conduct statute was unconstitutional.

The district court, after a bench trial, found against the Lewises on all of their claims except the actions for Tennessee common law battery and for violating their due process rights under Section 1983. As to these claims, the district court awarded Mr. Lewis $1,000.00 in compensatory damages against Officers Geil and Downs individually and jointly, Mrs. Lewis $500.00 in compensatory damages against Officer Geil, and Tony $750.00 in compensatory damages against Officer Geil. Moreover, the district court determined that Officers Geil and Downs had acted in a "malicious and oppressive manner" and awarded punitive damages of $4,000.00 to Mr. Lewis against both officers individually and jointly, $1,000.00 to Mrs. Lewis against Officer Geil, and $3,000.00 to Tony against Officer Geil. Finally, the district court awarded attorney's fees to the Lewises pursuant to 42 U.S.C. § 1988 (1982). On appeal, Officers Downs and Geil challenge the district court's conclusion that their conduct in this case violated the Lewises due process rights under Section 1983.

Section 1983 does not provide a remedy for every intrusion by a police officer upon a citizen's bodily integrity. *E.g., Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir.1981). Some conduct by police officers, however, may be of such a magnitude that it shocks the conscience of the court. *See Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952). Intrusions of this type violate the due process clause of the Fourteenth Amendment, and hence are actionable under Section 1983. *Wilson v. Beebe,* 770 F.2d 578, 582–83 & 586–87 (6th Cir.1985) (en banc); *Hall v. Tawney,* 621 F.2d 607, 613 (4th Cir.1980). In determining if a police officer's conduct rises to the level of a constitutional deprivation, factors such as the need for the force, the relationship between the need and the amount applied, the extent of the injury inflicted, and the motivation of the police officer in applying the force must be considered. *E.g., Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Finally, the circumstances surrounding the use of force must be carefully considered, *Shillingford,* 634

F.2d at 265 ("Actions permissible in controlling a riotous mob or in dealing with a life-threatening situation might weigh differently when taken against a peaceful pedestrian."), and the intrusion must not be subject to unrealistic *post hoc* evaluations, *cf. United States v. Sharpe*, — U.S. —, 105 S.Ct. 1568, 1576, 84 L.Ed.2d 605 (1985) ("A court ... should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing."). With these considerations in mind, we now turn to appellees' claims.

■ We believe that Mr. Lewis clearly stated a claim under Section 1983. The district court found that at the time the force was applied, by the two officers, Mr. Lewis, who weighed approximately 120 pounds, was being restrained by his brother Eugene, who weighed about 175 pounds. Thus, Mr. Lewis was not in a position to do physical harm to either officer or to further interfere with Tony's arrest. Striking the head with a nightstick and kicking the groin of a restrained man is plainly excessive. This is particularly true in this case in light of the district court's description of Mr. Lewis as physically inadequate. In fact, due to the application of such force, Mr. Lewis suffered a cut on the top of his head with an underlying hematoma and experienced tenderness in the groin area. Furthermore, the district court concluded that Officers Geil and Downs acted maliciously in applying the force as evidenced by their forcing Mr. Lewis while bleeding profusely to crawl to the gate. This conduct is so disproportionate, harmful, and demeaning as to offend even a person of "hardened sensibilities." *Rochin*, 342 U.S. at 172, 72 S.Ct. at 209. We conclude, therefore, that the force used by Officers Geil and Downs violated Mr. Lewis' due process rights.

■ The conduct of Officer Geil towards Mrs. Lewis was not of the same degree as that exhibited by Officers Downs and Geil towards Mr. Lewis; nonetheless, we hold that Mrs. Lewis also is entitled to redress under Section 1983. The district court found that Officer Geil both unnecessarily twisted Mrs. Lewis' arm and kicked her when she was on the ground handcuffed. If Officer Geil had only excessively twisted Mrs. Lewis' arm, we doubt that this conduct alone would rise to the level of a constitutional deprivation, considering the "inflammable situation" which the officers faced and remembering that Mrs. Lewis' conduct precipitated Officer Geil's actions. In this case, however, we are also concerned with Officer Geil's kicking of Mrs. Lewis. When Mrs. Lewis was kicked, she was handcuffed and on the ground. In such a position, she was of no danger whatsoever to either of the police officers nor was she in position to further encite her neighbors. Thus, as the district court concluded, Officer Geil's kicking of Mrs. Lewis was unnecessary and motivated by pure maliciousness. Although Mrs. Lewis was not seriously injured by the kicking and arm twisting,[2] we do not believe that a serious or permanent injury is a prerequisite to a claim under Section 1983. *See Norris v. District of Columbia*, 737 F.2d 1148, 1150–51 (D.C.Cir.1984) (discussing applicable case law and concluding that a serious injury is not required). Rather, all the facts and circumstances surrounding the application of force must be scrutinized and weighed. In this case, Officer Geil applied force which not only was excessive and unnecessary, but also was malicious. In such circumstances, we hold that Mrs. Lewis has a right to redress under Section 1983.

■ Finally, we consider the force used against Tony Lewis. In order to gain sufficient control over Tony to arrest him, Officer Geil resorted to pulling his hair, twisting his arm, and applying a choke hold.[3]

2. The district court in recognition of this fact only awarded Mrs. Lewis $500.00 in compensatory damages.

3. Apparently, the district court concluded that the choke hold applied by Officer Geil was reasonable.

In a situation, like the present, which called for quick action on the part of the police officers, we would be reluctant to find that such conduct in apprehending an individual, even if the actions as found by the district court were unnecessary and oppressive, constitutes a deprivation of due process. However, after having subdued and handcuffed Tony, Officer Geil also struck Tony about the face with his nightstick. The unprovoked and unnecessary striking of a handcuffed citizen in the mouth with a nightstick is clearly excessive. There was simply no reason for this type of conduct on Officer Geil's part; the striking, as the district court determined, could only be deemed malicious. Further, hospital records indicate that Tony received several stitches due to the injury to his mouth. This conduct in conjunction with the unnecessary and excessive pulling of Tony's hair and twisting of his arm rises to the level of a constitutional tort. We conclude, therefore, that Tony Lewis properly stated a cognizable claim under Section 1983.

Appellants also allege that the district court erred as a matter of law in assessing punitive damages against Officer Geil and Downs. Punitive damages are available under Section 1983 if the defendant's conduct is grossly negligent, intentional, or malicious. *Smith v. Wade*, 461 U.S. 30, 45–49, 103 S.Ct. 1625, 1634–37, 75 L.Ed.2d 632 (1983). Similarly, punitive damages are available under Tennessee law upon a showing of "fraud, malice, gross negligence or oppression." *Inland Container Corp. v. March*, 529 S.W.2d 43, 45 (Tenn.1975). In this case, the district court explicitly found that Officers Downs and Geil "acted in a malicious and oppressive manner by administering force far in excess of that needed." This finding is fully supported by the record. *See* Fed.R. Civ.P. 52(a). Thus, since the district court found that the officers acted maliciously and since under both federal and state law such a finding justifies an award of punitive damages, we affirm the district court's granting of punitive damages.[4]

For the foregoing reasons, the judgments of the district court are affirmed.

ENGEL, Circuit Judge, concurring.

In my opinion, this case was properly brought on for trial upon both the federal and pendent state claims. After reviewing the evidence at trial, I am satisfied that the trial judge properly complied with *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), in entering judgment and determining damages in favor of the plaintiffs on the basis of Tennessee state law.

The defendant police officers were placed in a very dangerous and unenviable position, brought about in great part by the irrational behavior of the plaintiff, Thomas Lewis, and his family. Under the circumstances, I am far from satisfied that the conduct of the police officers, even though it may have been violative of Tennessee's law of assault and battery, was of a quality or seriousness to reach proportions amounting to a violation of federal constitutional law. Accordingly, I content myself to concur on the basis that the judgment as entered is in any event fully supportable upon the basis of the trial judge's findings on the pendent state law claims.

---

**4.** We find appellants' assertion that the district court judge's conduct deprived them of a fair trial to be totally without merit. Similarly, we reject appellees' cross-appeal that the district court erred in failing to adopt the opinion of psychiatrist Dr. Jeanne M. Horan. *See Barry v. United States*, 501 F.2d 578, 584 (6th Cir.1974) (trier of fact can accept or reject any or all of an expert witness' testimony), *cert. denied*, 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975).