872 F.2d 1029
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Allen THORNTON and Kanette Thornton, Plaintiffs-Appellants,
v.
Patrolman Paul SPOONER, Patrolman Robert Simon, Lieutenant
William Tell, Patrolman Arnold Goodgame,
Defendants-Appellees.
 No. 86-3944.
 United States Court of Appeals, Sixth Circuit.
 March 21, 1989.
 
 Before BOYCE F. MARTIN, Jr., NATHANIEL R. JONES and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 The Thorntons appeal the granting of a summary judgment to Spooner, Simon and Tell; the granting of Goodgame's motion to vacate the entry of default against him; and the granting of a summary judgment to Goodgame. The defendants are police officers employed by the Cleveland Police Department who allegedly beat Mr. Thornton. We affirm as to all defendants except Goodgame. We remand for consideration of Goodgame's statute of limitations defense in light of the Supreme Court's decision in Owens v. Okure, 57 U.S.L.W. 4065 (U.S. Jan. 10, 1989).
 
 
 2
 * On September 26, 1984, the Thorntons filed a claim under 42 U.S.C. Sec. 1983 alleging that the defendants had violated their civil rights. Allen Thornton also alleged a number of pendent state claims for assault and battery, false imprisonment, and intentional infliction of emotional distress. Kanette Thornton alleged a pendent state claim for loss of consortium. In their original complaint, the Thorntons named Patrolman Charles Boddy and John and James Doe as defendants because, they claimed, they could not ascertain the identities of all of the officers involved in the incident. Allen Thornton mistakenly believed that he recalled Boddy's badge number, and so Boddy was named in the complaint.
 
 
 3
 On November 15, 1984, the Thorntons moved for leave to amend their complaint to substitute Goodgame, Spooner, Simon and Tell for the John and James Doe defendants. Leave was granted on March 1, 1985. On April 19, 1985, the complaint was dismissed as to Boddy. The Thorntons claim that they discovered the identities of Goodgame, Spooner, Simon and Tell on November 2, 1984. However, Goodgame was not served with process until August 18, 1985, in part because he and his family moved to New York at the end of 1984. Goodgame did not file an answer within the twenty-day period required in Fed.R.Civ.P. 12(a).
 
 
 4
 On September 23, 1985, a hearing was held. Goodgame did not appear, and the clerk entered default pursuant to Fed.R.Civ.P. 55(a). As a result of the hearing, the district court granted a summary judgment to Simon, Spooner and Tell on April 25, 1986. This motion was granted on the grounds that the pleadings demonstrated that none of these officers was responsible for the harm to Thornton.
 
 
 5
 On May 23, 1986, Goodgame's attorney entered his appearance and filed a motion for extension of time to file an answer, which was granted. On June 6, 1986, Goodgame filed an answer and a motion to vacate the entry of default against him. Goodgame sought to excuse his failure to appear at the original hearing because he and his wife were involved in a marital dispute which required frequent appearances in Family Court in New York. He admitted that he was served on August 18, 1985, but noted that he was barred from his residence by court order in September 1985 and was unable to retrieve the court papers. The court found this excused the neglect.
 
 
 6
 On June 27, 1986, Goodgame filed a motion for summary judgment on the grounds that the suit against him was time-barred. On September 5, 1986, the district court granted that motion, agreeing that the action was time-barred, and entered a final order dismissing the case.
 
 
 7
 The underlying facts are not in dispute. On September 26, 1983, Allen Thornton was arrested by officers of the Cleveland Police Department. He was handcuffed and allegedly forced into the back seat of a patrol car despite his protests that he was under a doctor's care for a back injury. At the police station, he was forced to sit on the floor of his jail cell, denied medical attention and use of toilet facilities; one officer kicked the soles of his feet, and his head and neck were twisted. Thornton was later released, and he was never charged with any offense. He claims to have suffered serious bodily injury as a result of his treatment at the jail.
 
 
 8
 Plaintiffs attempted to excuse their failure to name Goodgame earlier by their inability to discover his identity. Goodgame's name did appear on the log book for the night in question; the log book is a public record and so should have been available to Thornton upon request. However, Thornton claims that he and his attorneys were not permitted to review the log book or any other records that would have allowed them to discover Goodgame's identity any sooner.
 
 II
 
 9
 Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A mere scintilla of evidence is insufficient to defeat a motion for summary judgment. Anderson v. Liberty Lobby, Inc., --- U.S. ----, 106 S.Ct. 2505, 2512 (1986).
 
 III
 
 10
 The trial judge found that there was no question of fact regarding the claims against Spooner, Simon and Tell in that Thornton, in deposition testimony, stated that the officer who twisted his neck and kicked his feet was Black, while Spooner, Simon and Tell are white. Thornton was unable to identify the officer who allegedly pushed him into the police car. The arresting officers were Spooner and Goodgame, who is Black. Further, Thornton was unable to describe the alleged "excessive force" used to put him in the patrol car. Thus, although "an allegation of excessive force during an arrest is cognizable under Sec. 1983," Blake v. Katter, 693 F.2d 677, 682 (7th Cir.1982), Thornton's own testimony exculpates Spooner, Simon and Tell regarding the acts allegedly committed at the jail, and Spooner's involvement in placing Thornton in the police car is entirely speculative. "It is not the intent of Rule 56 [summary judgment] to preserve purely speculative issues of fact for trial." Exxon Corp. v. Federal Trade Commission, 663 F.2d 120, 128 (D.C.Cir.1980).
 
 
 11
 As regards Thornton's allegations regarding being forced to sit on the floor of his jail cell, and being deprived of toilet facilities, it should be noted that Thornton does not allege any violation of the eighth amendment in his complaint. Thus, cases such as Parrish v. Johnson, 800 F.2d 600 (6th Cir.1986), are inapposite. Further, the Supreme Court has stated that:
 
 
 12
 Loss of freedom of choice and privacy are inherent incidents of confinement in [a detention] facility. And the fact that such detention interferes with the detainee's desire to live as comfortably as possible during confinement does not convert the conditions or restrictions of detention into punishment.
 
 
 13
 Bell v. Wolfish, 441 U.S. 520, 537 (1979). Thus, Thornton cannot base a Sec. 1983 claim on the fact that he was made to sit on the floor.
 
 
 14
 Again, as with Thornton's claim that he was pushed into the police car, Thornton is unable to identify the person or persons who responded "no" when he asked if he could use the toilet facilities. Thus, again, any allegation against a particular individual regarding this denial would be purely speculative, and so cannot defeat a motion for summary judgment. Exxon, 663 F.2d at 128.
 
 
 15
 In opposing the defendant's motion for summary judgment, as well as on appeal, Thornton argues that Simon failed to intervene on his behalf when Goodgame allegedly twisted his head and neck at the booking desk. However, Thornton's complaint fails to allege a failure to intervene. Thus, even if Thornton's allegations on his briefs are true, he did not in his complaint state a claim sufficient on which to base relief. Fed.R.Civ.P. 12(b)(6).
 
 
 16
 As regards Thornton's claim that he was denied medical attention, his deposition testimony shows that he did not suffer a serious injury at all. He was released on the same night of his arrest and went directly home, not to a doctor or hospital. When he went to the hospital the following day, X-rays showed only a muscle spasm. Further, as the trial judge recognized, Thornton's booking slip shows that the officers followed standard procedure to determine whether medical help was needed. He was asked for the name of his personal physician, and whether he had any special medical needs. Thus, the record does not substantiate a claim that the officers showed a deliberate indifference to his condition.
 
 
 17
 In Lewis v. Downs, 774 F.2d 711, 713 (6th Cir.1985), this Court recognized that Sec. 1983 does not provide a remedy for every action taken by a police officer regarding an arrestee. In determining whether a police officer's conduct amounts to a constitutional claim cognizable under Sec. 1983, "factors such as the need for the force, the relationship between the need and the amount applied, the extent of the injury inflicted, and the motivation of the police officer in applying the force must be considered." Ibid. Thornton cannot show that Spooner, Simon or Tell used any force against him at all. His injury was negligible and may not have been caused by the events in question in that he claimed to be under treatment for a back injury when he was being placed in the police car. He presented no medical testimony at all. Further, his own testimony that a Black officer kicked him and twisted his head exculpates Spooner, Simon and Tell. Thus, there is no basis for questioning the district court's determination. The summary judgment regarding these three defendants is affirmed.
 
 IV
 
 18
 Thornton next argues that the district judge abused his discretion in vacating the entry of default against Goodgame. In essence, he argues that "good cause" for failing to answer within twenty days and failing to appear at the hearing cannot be predicated on Goodgame's affidavit explaining his marital problems, his frequent Family Court appearances in New York, and his inability, pursuant to court order, to enter his residence to obtain the papers served on him.
 
 
 19
 Fed.R.Civ.P. 55(c) states: "For good cause shown the court may set aside an entry of default." The court should consider three factors in ruling on a motion to vacate entry of default: (1) whether the plaintiff will be prejudiced; (2) whether the defendants's default was due to culpable conduct; and (3) whether the defendant has a meritorious defense. Shepard Claims Service v. William Darrah & Assoc., 796 F.2d 190, 193 (6th Cir.1986); United Coin Meter Co. v. Seaboard Coastline R.R., 705 F.2d 839, 844-45 (6th Cir.1983). Whether such a motion should be granted is within the sound discretion of the court. Shepard, 796 F.2d at 194.
 
 
 20
 As regards the first factor, a court should consider whether the plaintiff's " 'ability to pursue the claim has been hindered since the entry ...' by loss of evidence or otherwise." Gross v. Stereo Component Systems, Inc., 700 F.2d 120, 123 (3rd Cir.1983) (quoting Feliciano v. Reliant Tooling Co., 691 F.2d 653, 657 (3rd Cir.1982)). "Mere delay" is not sufficient prejudice to require that a motion to vacate entry be denied. United Coin Meter, 705 F.2d at 845.
 
 
 21
 In the present case, in opposing Goodgame's motion, the Thorntons did not claim that they would be prejudiced by the granting of the motion. The facts indicate that the Thorntons were able to litigate their claims against the other officers without Goodgame's presence. On appeal, the Thorntons claim that they were prejudiced by the unavailability of discovery from Goodgame, but they do not explain how they were prejudiced thereby. Neither do they claim that evidence was lost due to the entry of default.
 
 
 22
 As to the second factor, the court was within its discretion in holding that Goodgame's conduct was not culpable here. He has not shown bad faith or deliberate indifference. He has explained that his marital problems, with the accompanying court appearances, prevented him from knowing an answer was required.
 
 
 23
 Finally, Goodgame has presented defenses based on the statute of limitations, the good faith performance of his duties as a police officer, and the use of reasonable force to affect a lawful arrest. As the trial judge stated, for purposes of vacating an entry of default, it is sufficient that the defense relied on is good at law. United Coin Meter, 705 F.2d at 845. A statute of limitations defense to a civil rights claim is good at law, Walden, Inc. v. Rhode Island, 442 F.Supp. 1168 (D.R.I.1977), aff'd., 576 F.2d 945 (1st Cir.1978), as is good faith performance of duties. Landrum v. Moats, 576 F.2d 1320 (8th Cir.), cert. denied, 439 U.S. 912 (1978). Again, as the district court noted, the likelihood of success on the merits of these defenses need not be considered on a motion to vacate entry of judgment. United Coin Meter, 705 F.2d at 845.
 
 
 24
 Thus, we cannot say that the district judge abused his discretion on vacating the entry of default. For this reason, we affirm.
 
 V
 
 25
 The Thorntons' final claim on appeal is that the trial court erred in granting summary judgment to Goodgame based on the status of limitations.
 
 
 26
 The Thorntons' cause of action accrued on September 26, 1983. They moved for leave to amend their complaint to include the name of Goodgame on November 15, 1984. Thus, thirteen months passed between the accrual date and the date of filing. At the time this case was argued, this issue was controlled by our Circuit's decision in Mulligan v. Hazard, 777 F.2d 340 (6th Cir.1985), cert. denied, 476 U.S. 1174 (1986). There, we held that a federal court should borrow the relevant state's statute of limitations for intentional torts in Sec. 1983 actions. Id. at 344. Under Ohio law, that rule led us to apply a one-year period of limitations. Ibid. However, the Supreme Court recently settled the issue of what statute of limitations to borrow for application in Sec. 1983 actions when a state has multiple statutes of limitations for various personal injury actions. Owens v. Okure, 57 U.S.L.W. 4065 (U.S. Jan. 10, 1989). There, the Court held, contrary to our holding in Mulligan, that a state's general or residual statute for personal injury actions, and not the intentional tort statute, should apply. Id. at 4069. Thus, it would appear that the district court erred in following Mulligan, and the case must be remanded for further consideration in light of Okure. Therefore, the judgment of the district court is reversed with regard to defendant Goodgame and affirmed with regard to defendants Spooner, Simon and Tell.