977 F.2d 582
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Norman PURNELL, Administrator of the Estate of Armstead
Land, et al. Plaintiffs-Appellees,
v.
CITY OF AKRON, John Livers, John Gilbride, Robert Kroah, and
Daniel Gorring, Defendants-Appellants.
 No. 91-4055.
 United States Court of Appeals, Sixth Circuit.
 Oct. 15, 1992.
 
 Before KENNEDY and BOYCE F. MARTIN, Jr., Circuit Judges, and GRAHAM, District Judge.*
 PER CURIAM:
 
 
 1
 Defendants City of Akron and police officers John Livers, John Gilbride, Robert Kroah, and Daniel Gorring appeal the District Court's denial of their motion for qualified immunity and summary judgment. Defendants contend that because the standard for determining unconstitutional use of excessive force was not established in this Circuit prior to the incident that forms the basis of plaintiffs' suit, the District Court erred in not granting them qualified immunity. Defendants further contend that plaintiffs have failed to show a genuine issue of material fact, making it error for the District Court not to grant summary judgment. Because we agree with the District Court that plaintiffs have provided evidence such that, taking the evidence in the light most favorable to the plaintiffs, a rational jury could return a verdict in favor of the plaintiffs, we AFFIRM.
 
 I.
 
 2
 Defendants John Gilbride and Daniel Gorring arrived at a busy intersection in downtown Akron on the night of February 17, 1988, responding to a report that an intoxicated person was directing traffic. When Officer Gilbride stepped from the police vehicle, Armstead Land, on behalf of whose estate this suit was initiated, charged him. Officer Gorring then came around the police car to assist Gilbride in bringing Land under control. Unable adequately to control Land, Gilbride radioed for assistance. Almost immediately, Officers Kroah and Livers arrived. All four police officers then attempted to subdue Land, but were frustrated by Land's resistance, which included using his legs to push off from the police car against which the officers were trying to pin him. Because of this resistance, the officers then forced Land to the ground, where he continued to resist. According to the officers and defense eyewitnesses, Gilbride then used a nightstick as a fulcrum to pull Land's right arm behind his back to where it could be handcuffed. A second set of handcuffs was used to secure the first to Land's belt, in order to prevent Land from using his arms to struggle or from reaching into his pockets. Shortly thereafter, Land lost consciousness. After Livers checked Land's pulse and respiration and found each to be weak, Kroah radioed for paramedics.
 
 
 3
 Upon arriving at the scene, the paramedics found Land's pulse to be 60 and respiration to be 6. The paramedics received information at the scene that Land had a history of crack use and had been hit on the head with a baseball bat before the police arrived. During Land's transportation in the ambulance, it was discovered he was not breathing, and CPR was administered. Land was pronounced dead on arrival at the hospital. The coroner's autopsy report indicates that Land had suffocated due to vomit blocking his air passage. The report indicates no injuries to Land's neck.
 
 
 4
 Plaintiffs Norman Purnell, as executor of Land's estate, and decedent's wife and children, claim that Land's Fourth Amendment right not to be subjected to excessive force was violated by the four police officers. Defendants in turn asserted a defense of qualified immunity, based on a theory that the contours of this Fourth Amendment right had not been clearly established on the day of the incident, and moved for summary judgment. The District Court rejected defendant's qualified immunity defense and motion for summary judgment. Defendants appeal that decision, which is appealable by right under Mitchell v. Forsyth, 472 U.S. 511 (1985), and which is the subject of our review. Defendants do not appeal the District Court's denial of summary judgment on plaintiffs' state law claims, and plaintiffs do not appeal the District Court's grant of summary judgment against their federal inadequate medical care claim.
 
 II.
 
 5
 This Court reviews District Court interpretation of law de novo and reviews the denial of a motion for summary judgment for abuse of discretion. Pinney Dock & Trans. Co. v. Penn Central Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880 (1988).
 
 III.
 
 6
 According to defendants' qualified immunity theory, they should not be liable because a reasonable official in their position would not have known he was violating Land's rights if he used excessive force. Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). If the right involved is not "clearly established" at the time of the official action, a reasonable official cannot have known he was violating a constitutional right, and qualified immunity should be granted. Anderson v. Creighton, 483 U.S. 635, 639-40 (1987). To determine whether a right was clearly established at the time of the official action, a court must look to Supreme Court cases, cases from the court's circuit, and, as a last resort, cases from other circuits. Poe v. Haydon, 853 F.2d 418, 424 (6th Cir.1988), cert. denied, 488 U.S. 1007 (1989).
 
 
 7
 In 1989, well after the incident leading to Land's death, the Supreme Court decided that excessive force cases should be analyzed according to the "objective reasonableness" standard for Fourth Amendment seizure issues, rather than under the "shock the conscience" standard used in Fourteenth Amendment substantive due process issues. Graham v. Connor, 490 U.S. 386 (1989). Prior to Graham, the circuit courts had varied in their approaches to the issue. See, e.g., Rinker v. County of Napa, 831 F.2d 829, 831-32 (9th Cir.1987) (employing substantive due process standard); Lester v. City of Chicago, 830 F.2d 706, 710 (7th Cir.1987) (employing reasonable seizure standard). In fact, prior to Graham, this Circuit had applied both approaches to excessive force cases. See Lewis v. Downs, 774 F.2d 711 (6th Cir.1985) (employing substantive due process standard); Leber v. Smith, 773 F.2d 101 (6th Cir.1985), cert. denied, 475 U.S. 1084 (1986) (employing reasonable seizure standard). It is this state of the law defendants seize upon to argue that the right not to be subjected to excessive force was not clearly established.
 
 
 8
 Under the pre-Graham substantive due process approach to excessive force, the level of force used must have "shocked the conscience" before a violation was established. Lewis, 774 F.2d at 713. To determine whether force shocked the conscience, a number of factors were considered, such as the need for force, the relationship between that need and the level of force actually applied, the resulting injury inflicted, and the police officer's motive--whether force was used in good faith or with malice. Id. These factors were to be considered in light of all of the circumstances surrounding the use of force, and a court was to be careful that in engaging in hindsight it was realistic. Id. at 713-14.
 
 
 9
 Under the Fourth Amendment seizure approach used in this Circuit, excessive force is used if the police officer's actions were unreasonable. Leber, 773 F.2d at 105. In determining whether actions were unreasonable, the Leber court engaged in "[c]onsidering the factual circumstances surrounding the incident in question." Id.
 
 
 10
 The basis of defendants' claim that the District Court erred in not granting them qualified immunity is that because these two lines of analysis could both be found in cases of this Circuit prior to Graham, the right to be free from police use of excessive force was not clearly established. We hold, however, that despite these two different approaches to the issue, the right was clearly established in this Circuit prior to Graham. Certainly prior to 1987 a citizen had a right to be free from excessive police force, and any reasonable police officer should have known that. Further, even the amount of force was clearly established. The tests employed in Lewis and Leber may have been described by slightly different verbal formulations, but it is evident that both formulations guided the same thought process.[1] Thus, defendant cannot claim that the contours of the right were not sufficiently clear, and the District Court was correct in denying qualified immunity.
 
 IV.
 
 11
 The question remains whether plaintiffs have provided sufficient evidence of police use of force unreasonable in light of the circumstances, in order to survive a motion for summary judgment. The facts as provided by defendants' witnesses, even when taken in the light most favorable to plaintiffs, do not indicate an unjustified use of force. Land was a threat to himself and, in standing in the middle of the road and directing traffic, to the public. He resisted the initial attempts by two police officers to control him, and was still difficult to handcuff when there were four officers involved. Up to the time he was placed on the ground and handcuffed, there is no evidence of excessive force. The testimony of eyewitness Jimmy Small proffered by plaintiffs, however, does raise the issue of whether defendants used excessive force after plaintiff was subdued. Small claims to have seen one officer choking Land with his nightstick while another officer poked Land with his nightstick and the remaining officers held him down. Even though this is plaintiffs' only evidence of excessive force and is contradicted by other evidence, it is sufficient to meet the burden for overcoming summary judgment, and the District Court did not abuse its discretion in denying defendants' motion.
 
 V.
 
 12
 For the reasons stated above, we AFFIRM the District Court's denial of summary judgment for the defendants.
 
 
 
 *
 The Honorable James L. Graham, United States District Court for the Southern District of Ohio, sitting by designation
 
 
 [1]
 The Supreme Court has declared that in one important way the Fourth Amendment reasonable seizure test and Fourteenth Amendment due process test are incompatible. In Graham, the Supreme Court held that the due process inquiry into the police officer's motive was incompatible with the purely objective nature of the reasonable seizure test. 490 U.S. at 397-99. Because the officers' motive is in no way at issue in the present case, however, we find this distinction between the two standards not to be relevant