1 F.3d 1241
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Philip James JOPLIN, Plaintiff-Appellant,
v.
Emmett R. BAYLOR, Jr., Homer Horning, Paul Christian,
William Block, Yvonne Merson, M. Repella, R.N., Bureau of
Health Care, Herbert Adams, Barbara Boch, Louella Burke, and
Unknown Corrections Officers, Defendants-Appellees.
 No. 92-2182.
 United States Court of Appeals, Sixth Circuit.
 July 28, 1993.
 
 Before MILBURN and BOGGS, Circuit Judges and KRUPANSKY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Philip James Joplin appeals the district court's grant of summary judgment for the defendants in this civil rights action filed pursuant to 42 U.S.C. Sec. 1983. On appeal, the sole issue is whether the district court erred in granting summary judgment in favor of the defendants. For the reasons that follow, we affirm in part and reverse in part.
 
 I.
 A.
 
 2
 Plaintiff, a prisoner of the Michigan Department of Corrections, filed a pro se verified complaint on October 4, 1990, against numerous prison personnel pursuant to 42 U.S.C. Sec. 1983. Although Burke and Christian were named as defendants in the complaint, they were never served with process, and on February 4, 1991, plaintiff filed a notice of voluntary dismissal of the complaint against Warden Louella Burke, which was granted.
 
 
 3
 In his complaint, plaintiff alleged Fifth, Eighth, and Fourteenth Amendment violations, procedural due process violations, retaliatory transfer, unconstitutional search, and conspiracy to violate his constitutional rights on the part of defendants. Specifically, plaintiff asserted that defendants violated his constitutional rights when they deprived him of proper medical care, that he was transferred to another facility in retaliation for exercising his rights, that he was denied access to court, that he was deprived of his personal property, that he was illegally searched, and that defendants conspired to violate his constitutional rights. Plaintiff sought compensatory and punitive damages as well as declaratory relief.
 
 
 4
 On March 4, 1991, plaintiff filed motions for a temporary restraining order, for a preliminary injunction, and for class certification. On May 3, 1991, defendants filed a motion seeking dismissal of plaintiff's action or, in the alternative, for summary judgment. Defendants' motion was supported with numerous affidavits. The matter was referred to a magistrate judge, and on May 17, 1991, he ordered plaintiff to respond to defendants' motion for dismissal and/or summary judgment by June 7, 1991, because plaintiff had failed to file a response. Thereafter, the district court extended the time for a response to defendants' motion to September 19, 1991. However, plaintiff never filed a response to defendants' motion.
 
 
 5
 In January 1992, the magistrate judge issued a report and recommendation recommending that the entire action be dismissed for want of prosecution because plaintiff had failed to respond to defendants' motion. The magistrate judge also addressed plaintiff's claims on the merits and recommended that summary judgment be granted in favor of defendants on plaintiff's Eighth Amendment claims, on plaintiff's claims of improper transfer, on plaintiff's claim of an illegal search, on plaintiff's claim of deprivation of property, on plaintiff's claim of denial of access to the courts, and on plaintiff's claim of conspiracy. The magistrate judge further recommended that plaintiff's motions for a temporary restraining order, for a preliminary injunction, and for class certification be denied.
 
 
 6
 Subsequently, the district court entered an order directing plaintiff to show cause why the action should not be dismissed for want of prosecution due to his failure to respond to defendants' motion for dismissal and/or summary judgment. On May 15, 1992, plaintiff's newly appointed counsel responded to the show cause order by stating that plaintiff's numerous hospitalizations and strained financial condition prevented a response to defendants' motion. Thereafter, on June 30, 1992, plaintiff filed objections to the magistrate judge's report and recommendation.
 
 
 7
 Accordingly, the district court rejected the magistrate judge's recommendation that the entire action be dismissed for want of prosecution. However, the district court dismissed plaintiff's claims for unconstitutional transfer, unconstitutional search, conspiracy, and denial of access to the courts because plaintiff's response to the magistrate's report and recommendation contained no objection to the dismissal of those claims. Similarly, the district court denied plaintiff's motions for a temporary restraining order, for a preliminary injunction, and for class certification, because plaintiff's response to the magistrate judge's report and recommendation did not contain objections to the recommendation that those motions be denied. Further, after a de novo review of the remainder of the magistrate's report and recommendation in light of plaintiff's objections, the district court adopted the report and recommendation and granted defendants' motion for summary judgment on plaintiff's Eighth Amendment claims.
 
 
 8
 In addition to his objections to the magistrate judge's report and recommendation, plaintiff requested permission to amend his complaint to include pendent state law claims for deprivation of property. The district court denied the request based upon the authority of United Mine Workers v. Gibbs, 383 U.S. 715 (1966). This timely appeal followed.
 
 B.
 
 9
 Plaintiff was incarcerated at the Phoenix facility on January 18, 1990. Prior to his incarceration with the Michigan Department of Corrections at the Phoenix facility, plaintiff had been diagnosed as having cirrhosis of the liver. Part of the prescribed treatment for plaintiff's liver disease was a special two gram sodium diet. As a result of blood and urine testing performed at the Phoenix facility, defendants were aware that plaintiff was bleeding internally. In fact, every urine sample taken at the Phoenix facility revealed blood in plaintiff's urine.
 
 
 10
 On March 21, 1990, and April 24, 1990, plaintiff, a veteran, was transported to the Veterans' Administration, ("VA") Medical Center in Allen Park, Michigan, for evaluation, diagnosis, and treatment of his medical condition. Plaintiff alleges that one of the physicians at the VA sent a request to the Phoenix facility stating that plaintiff required certain medical testing, namely, an IVP, Urine C & S, Urine Cytolocpy (sic), and Retrograde Pyelograms. Plaintiff also alleges that the request from the VA physician stated that these tests were absolutely necessary for the diagnosis of his condition, and that the written request was transported back to the Phoenix facility with him. Plaintiff averred that, as of the date of the filing of his complaint, such tests had not been performed.
 
 
 11
 On May 11, 1990, plaintiff became ill and was transported to a hospital in Livonia, Michigan. As a result of this hospitalization, plaintiff was diagnosed as having hepatosplenomegaly.
 
 
 12
 Plaintiff alleges that on May 15, 1990, he was not transported to a scheduled appointment at the VA hospital. However, on June 4, 1990, plaintiff was transported to the VA hospital. On June 22, 1990, plaintiff was returned to the Phoenix facility from the VA hospital. Plaintiff alleges that when he was returned to the Phoenix facility, he had specific instructions that he was to return to the nephrology clinic, the G.I. clinic, and the hematology clinic for further testing. According to plaintiff, he had a scheduled appointment at the Nephrology Clinic of the VA hospital on July 12, 1990, at 2:30 p.m., but Shift Commander Block of the Phoenix facility cancelled the appointment. The appointment was rescheduled for July 19, 1990, but plaintiff was unable to receive treatment because his physician was on vacation.
 
 
 13
 Plaintiff further alleges that on August 31, 1990, defendant Repella medically cleared him for transfer to St. Clair County, Michigan, pursuant to a writ. He asserts that when he was transferred, the medical staff at the Phoenix facility failed to provide him with medication and failed to provide information on his special diet to St. Clair County officials.
 
 
 14
 Plaintiff asserts that when he arrived in St. Clair County, Michigan, he was transported to a hospital in Port Huron, Michigan, due to emergency circumstances. He further avers that after conferring with his physician at the VA hospital, the St. Clair County sheriff's office transported him back to the Phoenix facility on September 1, 1990, because St. Clair County officials did not want to assume responsibility for him in his current medical condition. Plaintiff alleges that when he arrived back at the Phoenix facility on September 1, 1990, Shift Commander Block was given a prescription written for him by a physician at the Port Huron hospital. According to plaintiff, Shift Commander Block informed him that he would never receive the medication, and Block threatened to institute disciplinary action against him for causing St. Clair County officials to take him to the hospital. Plaintiff further avers that on September 4, 1990, he asked the Health Services personnel at the Phoenix facility how they could refuse to supply him with prescribed medication, and he was told that this was being done pursuant to prison policy.
 
 
 15
 Plaintiff also avers that on September 20, 1990, he had another appointment at the VA hospital. In his complaint, plaintiff alleges that he informed the Health Services secretary personally when he returned from treatment at the VA hospital on August 23, 1990, that he had made an appointment for further treatment at the VA hospital. According to plaintiff, he was not transported to the VA hospital. Further, plaintiff asserts that he had an appointment at the VA hospital on August 24, 1990, for a dermatology biopsy and that he has never been transported to the hospital for this treatment.
 
 
 16
 Plaintiff also asserts that defendant Christian, the Food Services Director at the Phoenix facility, repeatedly denied him the specially prepared diet prescribed for his liver condition. In addition, plaintiff asserts that sometime between July 12 and July 19, 1990, defendant Block performed a pat down search, during which he deliberately struck plaintiff in the kidney, liver, and ankle area, aggravating plaintiff's condition. Further, plaintiff asserts that defendants Block and Horning allowed him to be shackled without just cause, producing severe pain in his ankles which had swollen due to his kidney condition.
 
 
 17
 Finally, plaintiff asserts that he has been in constant pain since arriving at the Phoenix facility and that he has been denied medication to alleviate his pain. He asserts that due to his physical condition and the medications he is taking, he is in need of rest room facilities which are nearby and available 24 hours a day. According to plaintiff, despite his medical needs, defendant Boch permitted him to be transferred to the Wayne facility where he was placed in an open dormitory arrangement, which forced him to share four toilets and one urinal with 44 other prisoners.
 
 
 18
 Numerous affidavits accompanied defendants' motion for summary judgment. Dean Rieger, M.D., the Medical Director at the Huron Valley Medical Center of the Michigan Department of Corrections ("MDOC"), responded that the care required by plaintiff could be provided by any of the MDOC facilities in the Huron Valley region and that at the time of the filing of the affidavits, plaintiff was receiving medical treatment for his condition, including pending appointments with the gastroenterology staff and the urology staff of the VA hospital.
 
 
 19
 Defendant Homer Horning stated in his affidavit that plaintiff's off-site medical needs, which were scheduled by the VA Medical Center and authorized by the prison Health Services, were responded to in a timely manner. Horning further stated that plaintiff's medical appointment on July 12, 1990, was not authorized by the prison Health Services, which possesses the sole authority to schedule medical appointments outside the prison. Horning also stated that for security reasons, inmates are not allowed to make their own medical appointments at the VA Medical Center or anywhere outside the prison, and Horning stated that plaintiff was not denied access to prescribed medication. Finally, Horning stated that because the Phoenix facility is an intake facility for the MDOC, all prisoners are subject to transfer from the facility. Horning stated that the Wayne facility to which plaintiff was transferred provides medical services beyond the scope of the Phoenix facility and that whenever a transfer occurs, the prisoner's medical charts always accompany him.
 
 
 20
 In her affidavit, Yvonne Merson, Phoenix Medical Records Clerk, stated that plaintiff's medical appointments at the VA hospital on April 15, 1990, September 20, 1990, and August 24, 1990, were never authorized by the prison Health Services. She stated that all off-site medical appointments which were authorized by the Health Services were promptly responded to.
 
 
 21
 Finally, in their affidavits, William Block, Captain of the Guards at Phoenix, and Barbara Bock, Phoenix Classification Director, stated that cruel and unusual punishment was not used to secure plaintiff for transportation outside the Phoenix facility.
 
 II.
 
 22
 This court reviews a district court's grant of summary judgment de novo, using the same test utilized by the district court. See Faughender v. City of North Olmsted, Ohio, 927 F.2d 909, 911 (6th Cir.1991). Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988).
 
 
 23
 The party moving for summary judgment need not support its motion with affidavits or other materials "negating" the opponent's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rather, "the burden on the moving party may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings to get to the jury; rather, it must go beyond the pleadings and by affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Id. at 324. Furthermore, this court accepts a verified complaint, to the extent that it is based on personal knowledge, as an opposing affidavit within the meaning of Fed.R.Civ.P. 56(e). See Hooks v. Hooks, 771 F.2d 935, 945-46 (6th Cir.1985).
 
 
 24
 Upon review of all the evidence relevant to the motion for summary judgment, a district court should, after viewing the evidence in a light most favorable to the nonmoving party, determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.
 
 A.
 
 25
 Plaintiff first argues that the district court erred in granting summary judgment in favor of defendants on his Eighth Amendment claim of deliberate indifference to his serious medical needs. Prison authorities may be sued for deliberate indifference to the serious medical needs of their prisoners under the Eighth Amendment as such indifference constitutes the "unnecessary and wanton infliction of pain." See Estelle v. Gamble, 429 U.S. 97, 104 (1976). If the offending conduct does not purport to be punishment, it must reflect an "unnecessary and wanton infliction of pain" to fall within the ambit of conduct proscribed by the Eighth Amendment. Ingraham v. Wright, 430 U.S. 651, 670 (1977). The evidence must also indicate that the prison officials had actual knowledge of a genuine or specific known risk of harm to the prisoner. See Marsh v. Arn, 937 F.2d 1056, 1061 (6th Cir.1991).
 
 
 26
 In this case, there is ample evidence that defendants were aware of plaintiff's medical condition. The evidence not only demonstrates that defendants were aware of plaintiff's condition, but also that they acted to see that plaintiff received adequate medical treatment for his condition while he was incarcerated at the Phoenix facility. The record shows that while plaintiff was incarcerated at the Phoenix facility, defendants saw to it that plaintiff was transported out of the facility to the VA hospital on numerous occasions for medical treatment. Moreover, although plaintiff complains that on four occasions defendants refused to transport him from the prison to the VA hospital, the evidence shows that on those occasions, plaintiff, on his own, made appointments for further medical treatment at the VA hospital and informed the prison staff when he returned to the Phoenix facility that he had made an appointment for medical treatment at the VA hospital. Defendants refused to transport plaintiff on these occasions because these appointments were not made by the prison health service, which possessed the sole authority to make appointments for medical treatment outside the prison.
 
 
 27
 In evaluating the constitutionality of the conduct of prison officials, the courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979). Clearly, the decision to transport plaintiff out of the prison directly impacts concerns of prison discipline and institutional security. Thus, defendants had valid reasons for not permitting inmates to make appointments for medical treatment outside the prison, but, rather, to require such appointments to be made by the prison Health Services. In this case, plaintiff seems to have assumed that merely because he was incarcerated and suffered from a serious medical condition, he could make appointments for outside medical treatments as if he were not incarcerated and that Michigan prison officials were then required to chauffeur him around the state at his whim for medical treatment. Given the need by prison officials to maintain institutional security, order, and discipline, this is not the case.
 
 
 28
 It should be further noted that at the time defendants filed their motion for summary judgment, plaintiff had two additional appointments at the VA hospital for further testing and treatment. Thus, although this is a case where plaintiff suffers from a serious medical condition, it is not a case where defendants are denying him medical treatment for that condition in such a way as to suggest the wanton and deliberate infliction of pain.
 
 
 29
 Plaintiff further asserts that defendant Christian denied him his specially prescribed diet and that on at least one other occasion, defendant Block denied him medicine that had been prescribed for him by a physician at the Port Huron hospital. According to plaintiff, defendant Block told him that he would never receive this medication and that the denial of the prescribed medication was pursuant to prison policy. In Byrd v. Wilson, 701 F.2d 592 (6th Cir.1983) (per curiam), a case remarkably similar to this case, the plaintiff, a prisoner incarcerated in the Kentucky State Penitentiary, was treated at various medical centers throughout the state and was diagnosed as having post-hepatitic type cirrhosis of the liver. Both medication and a low-sodium, high-protein diet were prescribed for his condition. Appellant sued the prison staff under section 1983 alleging that for several days in December 1980, he tried unsuccessfully to obtain his medicine and his diet from the prison staff. This court reversed the dismissal of plaintiff's action finding that plaintiff's complaint alleged facts which if proven could constitute deliberate indifference under the Eighth Amendment based upon plaintiff's needs for a special diet and medication. Id. at 595.
 
 
 30
 In this case, plaintiff has made similar assertions regrding the denial of his special diet and medication. However, the only defendant which plaintiff named concerning the denial of his special diet is defendant Christian, and plaintiff failed to obtain service of the summons and complaint on Christian. Federal Rule of Civil Procedure 4(j) requires that a plaintiff must serve a defendant within 120 days of the filing of the complaint to avoid dismissal of the complaint. Dismissal for noncompliance with Rule 4(j) is mandatory, absent a showing of "good cause." See United States v. Gluklick, 801 F.2d 834, 837 (6th Cir.1986), cert. denied, 480 U.S. 919 (1987). Plaintiff has not demonstrated good cause for the failure to serve Christian, nor has he even attempted to plead that good cause exists for the failure to serve Christian. Thus, we decline to consider plaintiff's claims against defendant Christian for the denial of his special diet, and the district court's grant of summary judgment with regard to this claim shall be affirmed.
 
 
 31
 However, plaintiff also asserts that defendant Block denied him medication which had been prescribed for his condition and also told him that he would never receive it. In their affidavits, defendants have responded that "[a]ccess to prescribed medication was never denied to plaintiff." J.A. p. 72. In granting summary judgment to defendants, the district court assumed that plaintiff did not respond to defendants' motion for summary judgment as required by Celotex, 477 U.S. at 324. However, because plaintiff's pro se complaint was a verified complaint based upon personal knowledge, it satisfied the affidavit requirement of Rule 56(e). See Hooks, 771 F.2d at 945-46. Thus, a genuine issue of material fact is presented by the opposing affidavits of the parties as to whether defendants ever denied plaintiff medicine prescribed for his condition. Moreover, if plaintiff can establish that he was denied medicine prescribed for his condition, it would constitute deliberate indifference to his serious medical needs under the Eighth Amendment. Therefore, the district court's grant of summary judgment shall be reversed with regard to plaintiff's claim of denial of prescription medicine. Finally, as indicated above, the district court's grant of summary judgment in favor of defendants shall be affirmed in all other respects based upon plaintiff's Eighth Amendment claims of deliberate indifference to his serious medical needs.
 
 B.
 
 32
 Plaintiff also raises an Eighth Amendment claim with respect to the pat down search performed by defendant Block in July 1990 and the fact that he was placed in leg shackles. However, defendants have responded that plaintiff was only placed in leg shackles when he was being transported out of the prison, and the pat down search was also performed when plaintiff was being prepared for transport out of the prison. Placing plaintiff in leg shackles when he was being transported out of the prison and performing a pat down search of plaintiff prior to taking him out of the prison clearly involve the need to preserve internal order and discipline and to maintain institutional security. Bell, 441 U.S. 520, 547 (1979). However, in his verified pro se complaint, plaintiff asserts that not only did defendant Block perform a pat down search, he asserts that while Block was performing the search, he deliberately struck plaintiff in the liver, kidneys, and ankles. Thus, plaintiff asserts that Block assaulted him while performing the pat down search.
 
 
 33
 In their affidavits, defendants have not responded to plaintiff's allegation of assault; rather, they have responded with the conclusory allegation that "[c]ruel and unusual punishment was not used in securing Plaintiff for transportation outside of the facility." J.A. p. 74. Not only does this not respond to plaintiff's allegation, it is a conclusion of law, not a statement of fact. Moreover, as was stated above, in deciding to grant summary judgment, the district court again assumed that plaintiff's verified complaint did not satisfy the requirements of Celotex. Thus, a genuine issue of material fact exists as to whether defendant Block assaulted plaintiff while performing a pat down search of plaintiff's person in July 1990. Therefore, the district court's grant of summary judgment shall be reversed with regard to plaintiff's claim involving the pat down search and affirmed with regard to the claim involving the use of leg shackles.
 
 C.
 
 34
 Defendants also contend that defendants Horning and Baylor are immune from a suit for damages under the Eleventh Amendment because defendant has sued them in their official capacities, and that all of the defendants who are sued in their individual capacities are entitled to qualified immunity. State officials are not subject to suit for monetary damages in their official capacity under 42 U.S.C. Sec. 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 and n. 10 (1989). However, in this case, plaintiff pleads that he was suing all of the defendants in their individual capacities as well as their official capacities; thus, it is possible that Baylor and Horning could be held liable for damages. Hafer v. Melo, 112 S.Ct. 358, 362-63 (1991). However, a review of the record reveals that plaintiff has not alleged any personal involvement in his surviving claims on the part of Baylor and Horning; rather, he seeks to hold them liable based upon their supervisory capacity. This court has repeatedly held that without direct involvement, a right to control employees, standing alone, will not support liability of supervisory personnel in a section 1983 action. Poe v. Haydon, 853 F.2d 418, 429 (6th Cir.1988), cert. denied, 488 U.S. 1007 (1989). Thus, plaintiff's claims against defendants Horning and Baylor shall be dismissed for lack of personal involvement. Thus, we need not address the Eleventh Amendment issue raised by Horning and Baylor.
 
 
 35
 The question of whether an official exercising a discretionary function is protected by qualified immunity turns on the "objective legal reasonableness" of the official's action assessed in light of the legal rules that were "clearly established" at the time it was taken. Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). Under the objective legal reasonableness standard, individual claims of immunity must be analyzed on a fact-specific, case-by-case basis to determine whether the plaintiff's federal or constitutional rights were so clearly established when the alleged misconduct was committed that any official in the defendant's position would understand that what he was doing violated those rights. See Anderson v. Creighton, 483 U.S. 635, 640 (1987).
 
 
 36
 As was discussed above, the only claims of plaintiff which survive in this case are his claims for the withholding of prescribed medication and for an assault during the course of the pat down search, both of which occurred between July and September 1990. In this case, defendants knew that plaintiff had a serious physical condition, and it was clearly established in September 1990 that to withhold prescribed medication violated the constitutional rights of an incarcerated prisoner. See Byrd, 701 F.2d 592, 595 (6th Cir.1983) (per curiam). Likewise, by July 1990, it was well established in the Sixth Circuit that an assault violates a prisoner's Eighth Amendment rights where he can demonstrate that the infliction of pain was unnecessary and wanton. McHenry v. Chadwick, 896 F.2d 184, 187 (6th Cir.1990) (quoting Lewis v. Downs, 774 F.2d 711, 714 (6th Cir.1985)). Therefore, the defendants are not entitled to qualified immunity on plaintiff's surviving claims.
 
 III.
 
 37
 For the reasons stated, the district court's grant of summary judgment is REVERSED with respect to plaintiff's Eighth Amendment claims for the denial of prescription medication following his hospitalization on September 1, 1990, and for the alleged assault which occurred during the pat down search on July 19, 1990. However, the district court's grant of summary judgment is AFFIRMED with respect to all of the remaining claims made by plaintiff. Finally, plaintiff's claims against defendants Baylor and Horning are DISMISSED for lack of any alleged personal involvement. We express no view as to the eventual outcome of this case.