75 F.3d 230
 34 Fed.R.Serv.3d 243, 43 Fed. R. Evid. Serv. 958
 Joseph Walter COX and Bennie Burgan, Jr., Plaintiffs-Appellants,
v.
Gregory TREADWAY, Jerry Warman, William P. Hanka, Michael
Dossett, John Winstead, Robert O'Neil, Russell
Wilson, Daniel Assef, Daniel Hyland, and
Patrick Timmons, Defendants-Appellees.
 No. 94-5184.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 10, 1995.
Decided Jan. 25, 1996.
Rehearing and Suggestion for Rehearing En Banc Denied March
14, 1996.
 
 Gail Robinson (argued and briefed), Kevin McNally (briefed), Frankfort, for plaintiffs-appellants.
 Winston E. King, Asst. Law Director (argued and briefed), Paul V. Guagliardo (argued and briefed), Denise Deberry Brown, City of Louisville, for defendants-appellees.
 On Appeal from the United States District Court for the Western District of Kentucky.
 Before: RYAN, BATCHELDER, and MOORE, Circuit Judges.
 MOORE, J., delivered the opinion of the court, in which BATCHELDER and RYAN, JJ., unanimously joined in Parts I, II B, II C, II D, III A, III C, III D, III E, and III F. Parts II A and III B express the views of only Judge MOORE. RYAN, J. (pp. 241-42), delivered a separate opinion concurring in part, in which Judge BATCHELDER concurred, which is thus the opinion of the court with respect to the issues addressed in Parts II A and III B.
 MOORE, Circuit Judge.
 
 
 1
 Plaintiffs-Appellants Joseph Cox ("Cox") and Bennie Burgan ("Burgan") appeal an adverse jury verdict on their police brutality claim under 42 U.S.C. § 1983. Cox and Burgan (collectively "Appellants") allege that the trial court made various errors including giving improper jury instructions, excluding certain evidence, and dismissing four defendants on statute of limitations grounds. The judgment of the district court is affirmed, for the reasons explained below in this opinion and in that of Judge Ryan.
 
 I. FACTS
 
 2
 Louisville, Kentucky narcotics officers had planned a reverse drug buy so that they could arrest Cox. The police planned to have an informant, Wayne Sprigg, meet Cox on June 20, 1990, at a truck stop where Sprigg would sell Cox some marijuana that had been provided by the police. The marijuana would be stored in the trunk of Sprigg's car. Sprigg was to give Cox or his accomplice, Burgan, a phony key to Sprigg's car. Officers were to move in and arrest Cox and/or Burgan after the money had been transferred.
 
 
 3
 However, the officers' plan went awry. Sprigg gave his "phony" car key to Burgan, who actually started Sprigg's car and drove off. Cox and Sprigg then drove off in Cox's car. After police chased Cox's car, Cox pulled the car into a yard, jumped out of the car, and ran. Police vehicles also pulled into the yard and pursued Cox. Cox and three police officers apparently fell into a nearby ravine.
 
 
 4
 At this point, the parties' stories diverge. The officers testified that they pulled Cox out of the ravine, instructed him to get on the ground, and secured his hands behind his back with a military whip belt. Cox testified that the officers pushed him face down, forced him to his knees, and kicked him in his head, back, and shoulders, while he was handcuffed and not resisting in any manner. The officers denied that anyone struck or kicked Cox.
 
 
 5
 Cox was put in Officer Dossett's car, which apparently then joined in the search for Burgan. Cox testified that a voice on the police radio ordered the officers to "ram" Burgan's car. Dossett's car collided with Burgan's car.
 
 
 6
 An officer went to Burgan's car and pulled Burgan out of the car. The officers testified that Burgan struggled, kicked, and tried to get out through the other door before he was pulled from the car. The officers also testified that Burgan struggled until several officers handcuffed him and leaned him on the back of the car. Appellants testified that an officer opened Burgan's car door and walked him to the back of the car, and that Burgan did not resist in any way.
 
 
 7
 Neither party disputes that Burgan received a minor head injury, but the parties disagree about the cause of the injury. The officers asserted that Burgan was injured in the automobile accident or when he was pulled from the car, and that no officer struck Burgan at any time. Appellants asserted that Officer Treadway hit Burgan twice with the butt of a gun--once in the head and once on the hand--and that Officer Treadway yelled that the marijuana had better be in the trunk of the car Burgan was driving.
 
 
 8
 Appellants also testified that, after Cox asked Officer Dossett whether Treadway's actions were necessary, Officer Treadway came over to Officer Dossett's car, opened the car door, and hit Cox twice with his fist. Cox testified that Treadway then stuck Treadway's gun in Cox's mouth and said "I ought to blow your ... brains out and throw you in the river and be done with you." The officers denied that these events occurred.
 
 
 9
 The officers did not find the marijuana in the car Burgan was driving. The officers then took Burgan to Burgan's house to look for the marijuana. Burgan was taken to the bedroom, where appellants alleged that Officer Treadway choked and hit Burgan. The officers denied that any officer choked or hit Burgan.
 
 II. INSTRUCTIONS
 
 10
 A. District Court's Instructions Regarding Force.
 
 
 11
 Appellants argue that the district court erred in failing to give their requested instruction that no force can be used on a citizen who has been arrested and restrained. The district court orally instructed the jury on the amount of force that officers could use as follows:
 
 
 12
 The defendants have the lawful authority and indeed the lawful duty under state law to use physical force as may have been reasonably necessary to accomplish an arrest and to protect themselves from physical harm at the hands of any person, including, of course, a plaintiff.
 
 
 13
 If you find from a preponderance of the evidence either that a defendant knowingly used greater force than he believed was reasonably necessary in order to accomplish a lawful purpose or knowingly used more force than would have appeared to a reasonable person in like circumstances to be necessary in order to accomplish a lawful purpose, then you may find that a defendant acted unlawfully contrary to state law and did, without due process of law, deprive a plaintiff of liberty secured and protected by the constitution of the United States.... [A police officer] may use reasonable force to make an arrest or to defend himself....
 
 
 14
 The issue in this case deals with reasonable force. The right to make an arrest or an investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat to effect it. The reasonableness inquiry in an excessive force case is an objective one. The question is whether the officers' actions are objectively reasonable in light of the facts and the circumstances confronting them without regard to their underlying intent or motivation.
 
 Appellants' requested instruction was:
 
 15
 ... it is a violation of the Fourth Amendment to the United States Constitution for an officer, acting under color of law, to use physical force on a citizen who has been arrested and restrained.
 
 
 16
 The district court refused to give the requested instruction.
 
 
 17
 Appellate courts do not review jury instructions for technical error. United States v. Cobb, 905 F.2d 784, 788 (4th Cir.1990), cert. denied, 498 U.S. 1049, 111 S.Ct. 758, 112 L.Ed.2d 778 (1991). Appellate courts "review the jury charge as a whole to determine whether it fairly and adequately submits the issues and the law to the jury." United States v. Carr, 5 F.3d 986, 992 (6th Cir.1993).
 
 
 18
 A refusal to give a requested jury instruction is reversible error only if three conditions are satisfied. First, the omitted instruction must be a correct statement of the law. Second, the instruction must not be substantially covered by other delivered charges. Third, the failure to give the instruction must impair the requesting party's theory of the case. Carr, 5 F.3d at 992.
 
 
 19
 Appellants' requested instruction essentially is a correct statement of the law, although it does not go far enough. Appellants' requested instruction also should have contained a statement that the arrestee must be restrained and must be completely under the control of the police for the "no force" rule to apply. This court has held that beating and kicking restrained suspects who are in the control of the police is "plainly excessive" force. Lewis v. Downs, 774 F.2d 711, 714 (6th Cir.1985). Accord, McDowell v. Rogers, 863 F.2d 1302, 1307 (6th Cir.1988) (need for force is "nonexistent" when suspect handcuffed and not trying to resist or escape); Feemster v. Dehntjer, 661 F.2d 87, 89 (8th Cir.1981) ("[t]here is no occasion for the use of any force against a prisoner who quietly submits.... No matter how difficult it is to apprehend a prisoner, the law does not permit officers to beat him once he is securely in custody.").
 
 
 20
 The charge actually given to the jury in this case did not substantially cover the post-restraint Fourth Amendment law that was partially contained in appellants' requested instruction, because the charge as given could have allowed the jury to believe that some force could be used on a restrained suspect in police control as long as the force was not excessive. The failure to give a post-restraint instruction in this case did impair the appellants' theory of the case by not informing the jury that there is no justification for force when the suspect is securely in custody and not attempting resistance or escape. Therefore, the jury should have been instructed that it is unreasonable and thus a violation of the Fourth Amendment for a police officer, acting under color of law, to use physical force on a citizen who has been arrested and restrained, who is securely under the control of the police, and who is not attempting to escape. See Feemster, 661 F.2d at 89.
 
 
 21
 The district court should have given this suggested Fourth Amendment post-restraint instruction in addition to the instruction it actually gave to the jury. In Feemster v. Dehntjer, 661 F.2d 87, 89 (8th Cir.1981), the Eighth Circuit held that a "reasonable force" instruction similar to the district court's should not have been given at all in a case where the only claim actually maintained at trial was a claim that the plaintiff was beaten and denied medical care after he surrendered to police. However, in Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court held that all claims of excessive force in arrests, investigatory stops, and other seizures before pretrial detention should be considered under the "objective reasonableness" standard developed in Fourth Amendment jurisprudence. The district court's instruction was taken directly from the Graham case and was required by the Graham decision insofar as there was testimony that some of the injuries occurred during the process of arrest. However, the suggested Fourth Amendment post-restraint instruction should have been given as an additional instruction to ensure that the jury was not misled as to the amount of force that could be used after the suspects were restrained and securely under the control of the police. See Doe v. Sullivan County, Tennessee, 956 F.2d 545, 555 (6th Cir.), cert. denied, 506 U.S. 864, 113 S.Ct. 187, 121 L.Ed.2d 131 (1992) (jury verdict should be set aside when "instructions, viewed as a whole, were confusing, misleading, and prejudicial.").
 
 
 22
 Judge Ryan argues that this suggested Fourth Amendment post-restraint instruction is unconstitutional and eliminates the reasonableness analysis required by Graham. To the contrary, it does not depart from Graham. It accurately applies Graham to the situation in this case, which involves both pre-arrest and post-restraint conduct. This instruction merely explains to the jury that certain conduct is unreasonable, and therefore violative of the Fourth Amendment, after arrest and full restraint. This instruction does not prevent the jury from weighing the circumstances in determining whether the arrest is complete, whether the arrestee is securely under the control of the police, and whether the arrestee is attempting to escape. This instruction merely provides the jury with the proper legal standards to guide its factual determinations. Such an instruction is in no way unconstitutional, and in fact is fully consistent with the law of the Supreme Court and with the law of this circuit as stated in Lewis and McDowell. Although Lewis and McDowell both predate Graham, their holdings that no force may be used on fully restrained arrestees are fully consistent with Graham and have not been disavowed in any way by this court. It is true that Lewis was decided under a substantive due process standard that the Supreme Court later disavowed in Graham. Lewis, 774 F.2d at 713-14. Nevertheless, the Lewis holding that no force may be used on a fully restrained arrestee survives Graham, as demonstrated by McDowell, which reached the same result under the Fourth Amendment analysis that was subsequently approved in Graham. McDowell, 863 F.2d at 1306.
 
 
 23
 Judge Ryan also complains that this instruction is "patently result-oriented" and "disingenuous" because it creates "a different Fourth Amendment standard applicable to the use of force in a post-arrest situation than is applicable to pre-arrest conduct." Nothing could be farther from reality. As explained above, this instruction is not a "different standard" but merely an application of the reasonableness standard in the post-arrest context, rather than in the pre-arrest context of Graham. This instruction informs the jury that is unreasonable to use force in this different context, where the defendant is securely under police control, and not attempting to flee or fight.
 
 
 24
 Finally, criticism for describing the circumstances in which the use of force is unreasonable, and statements that this approach is "doomed to failure" and that it "cannot succeed in covering" all of the circumstances that should be considered in determining reasonableness, are unduly pessimistic. Moreover, no additional circumstances, other than arrest, restraint, police control, and escape, that may be relevant to that determination, are suggested by the separate opinion that follows.
 
 
 25
 It is quite likely that the objective reasonableness instruction, given here without the additional Fourth Amendment post-restraint instruction, did mislead and confuse the jury and result in prejudice to the appellants. A note, signed by six of the eight jurors, was sent to the district judge, stating:
 
 
 26
 To Judge Rubin,
 
 
 27
 Some jurors feel that something definitely happened 6-20-90. However, the preponderance of evidence was not sufficient to render a decision for the plaintiff.
 
 
 28
 Although this note could be interpreted simply as saying that the plaintiffs did not meet their burden of persuasion, the note also is consistent with juror misunderstanding and confusion that led to a verdict for the defendants despite the jurors' belief that "something definitely happened." In light of the uncertainty evidenced by the jurors' note, the error in the instructions cannot be viewed as lacking any prejudicial effect.
 
 
 29
 Appellants also requested that the word "unnecessary" be substituted for the word "excessive" wherever it appeared in the instructions, but this request is without merit. First, the court clearly instructed in the first two paragraphs of the jury instructions reproduced above that plaintiffs could prevail if the officers used more force than was "reasonably necessary" under the circumstances. Second, Sixth Circuit precedent has stated that the use of force on restrained prisoners may be termed "excessive" force, although the term "unnecessary" is sometimes used interchangeably. Lewis v. Downs, 774 F.2d 711, 714-15 (6th Cir.1985) (striking and kicking restrained man "excessive," kicking handcuffed woman "unnecessary," and "unnecessary striking of a handcuffed citizen in the mouth with a nightstick is clearly excessive."); McDowell v. Rogers, 863 F.2d 1302, 1306 (6th Cir.1988) (claim that suspect beaten while handcuffed is an "excessive force" claim under the Fourth Amendment).
 
 
 30
 B. The District Court's Instruction On The "Heat Of Battle."
 
 
 31
 Appellants complain that the district court should not have given a portion of the instruction that they refer to as the "heat of battle" instruction. This portion of the instruction given orally by the district court stated:
 
 
 32
 The calculation of reasonableness must embody allowances for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation.
 
 
 33
 Let me point something out. The standard is not what is appropriate in the quiet and sanctity of a courtroom where the evidence is presented but rather a standard appropriate to the circumstances in which the incident happened. Excessive force is that which exceeds reasonable force.
 
 
 34
 Appellants requested that this portion of the instruction be deleted from the instruction given to the jury because Cox and Burgan were not resisting arrest. The court refused, saying that the instruction was proper as set out by the Supreme Court in Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).
 
 
 35
 In Graham, the Supreme Court held that "all claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure'... should be analyzed under the Fourth Amendment and its 'reasonableness' standard...." 490 U.S. at 395, 109 S.Ct. at 1871. The Court went on to state that "the 'reasonableness' inquiry in an excessive force case is an objective one...." 490 U.S. at 396-97, 109 S.Ct. at 1872. The Supreme Court described the reasonableness determination in precisely the "calculus of reasonableness" language used by the district court in this case. 490 U.S. at 397, 109 S.Ct. at 1872. Since there was evidence in the record that some of appellants' injuries were suffered during the course of their arrests and while police were restraining appellants and bringing them under control, it was not error to give this instruction drawn from Graham.
 
 
 36
 C. The District Court's Instruction On Failure To Intervene.
 
 
 37
 Appellants complain that the district court's instruction on the failure of other police officers to intervene in the alleged beatings was defective. The district court instructed the jury on this issue as follows:
 
 
 38
 A police officer may be liable in a situation involving excessive force whereby [sic] his inaction he fails to perform a statutorily imposed duty to enforce the law equally and fairly. Acts of omission are actionable to the same extent as are acts of commission.
 
 
 39
 Appellants requested that the instruction include language that an officer may not "fail to stop others who summarily punish a third party." Appellants argued that the jury might not understand what the "enforce the law equally and fairly" language means. Appellees then requested the addition of language indicating that an officer would have to observe the abuse before the officer would be liable for failing to stop it. The district court declined to make either addition, saying that its instruction was a correct statement of the law.
 
 
 40
 The district court's instruction was based on Bruner v. Dunaway, 684 F.2d 422 (6th Cir.1982), cert. denied, 459 U.S. 1171, 103 S.Ct. 816, 74 L.Ed.2d 1014 (1983), and was correct as far as it went. However, appellants' requested instruction also was based on Bruner, was a correct statement of the law, and is more clearly comprehensible to a jury.
 
 
 41
 There is merit in appellants' argument that a jury might not understand the import of the district judge's instruction. However, this instruction was clarified by the questions asked of the jury in the verdict form, which included a question about whether any officer "by his inaction," failed to prevent the use of excessive force on appellants. Deficient jury instructions that are explained and corrected by other portions of the instructions may be rendered not misleading and therefore not reversible error. Clarksville-Montgomery County School System v. U.S. Gypsum Co., 925 F.2d 993, 1003-04 (6th Cir.1991).
 
 
 42
 D. Different Oral And Written Jury Instructions.
 
 
 43
 Appellants complain that the district court submitted written jury instructions to the jury that differed from the oral instructions given to the jury. Although there is a factual dispute about whether the appellants properly preserved this objection, we need not resolve this dispute since appellants' underlying argument has no merit. The written instructions directed that the defendants had acted under color of state law, while the oral instructions asked the jury to decide whether the defendants had acted under color of state law. Appellants cannot have been prejudiced because the written instructions directed the jury to find in their favor on one necessary element of their claim. The elements of the cause of action and the mental state required also were stated differently in the written instructions, but these differences could not have prejudiced appellants because both were correct statements of the law. Appellants also complain that the written instructions do not contain instructions on bystander liability, nominal damages, and the effect of income taxes. However, these omissions could not have misled the jury to the prejudice of appellants because the jury never considered these issues since it found that no excessive force was used.
 
 III. OTHER ASSIGNMENTS OF ERROR
 
 44
 A. Admonishing Counsel During Opening Statement And Cutting Opening Statement Short.
 
 
 45
 Appellants argue that the trial court abused its discretion by admonishing appellants' counsel to refrain from argument during her opening statement and by cutting her opening statement short without prior notice. The court interrupted appellants' opening statement three times to admonish counsel about arguing her case during opening statements.
 
 
 46
 Appellate courts review a district judge's conduct of a trial, including the conduct of opening statement, for abuse of discretion. See United States v. Poindexter, 942 F.2d 354, 360 (6th Cir.), cert. denied, 502 U.S. 994, 112 S.Ct. 615, 116 L.Ed.2d 637 (1991). A district court's supervisory powers over opening statements include the power to interrupt counsel who is presenting argument during opening. United States v. Bermea, 30 F.3d 1539, 1569-70 (5th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1113, 130 L.Ed.2d 1077 and --- U.S. ----, 115 S.Ct. 1825, 131 L.Ed.2d 746 (1995). An abuse of discretion has been found only in rare cases, such as where the judge interrupted the proceedings more than 250 times. United States v. Hickman, 592 F.2d 931, 932 (6th Cir.1979). The trial court's conduct in this case was a legitimate attempt to control opening statements and did not deny appellants a fair trial.
 
 
 47
 B. The District Court's Rulings Concerning Testimony About Sprigg's Statements To His Friend.
 
 
 48
 Appellants complain that the trial court erred when it refused to admit testimony by Lee Spencer, a friend of police informant Sprigg. Ms. Spencer was prepared to testify that when Sprigg met up with her at the end of the evening, he told her that the police "beat the hell out of them," and that "they kicked Cox and they hit Bennie Burgan in the head with a gun." The District Court admitted a portion of Ms. Spencer's testimony regarding events at Burgan's house.
 
 
 49
 Appellants argue that Ms. Spencer's remaining testimony is admissible under the excited utterance exception to the hearsay rule, Fed.R.Evid. 803(2), or under 803(24), the residual hearsay exception. Appellants also argue that the statements are not hearsay under Fed.R.Evid. 801(d)(1)(B) because they are prior consistent statements offered to rebut a charge of recent fabrication.
 
 
 50
 A district court's determination of whether evidence constitutes hearsay under the Federal Rules of Evidence is a conclusion of law that is reviewed de novo. Hancock v. Dodson, 958 F.2d 1367, 1371 (6th Cir.1992). The trial court's legal ruling on the excited utterance issue was correct, and its factual determinations were not an abuse of its discretion. The court considered the demeanor of the declarant and the lapse of time between the actual events and the statements, in determining that the statements about the events at the accident scene were made as a result of reflective thought and thus inadmissible as excited utterances.
 
 
 51
 However, Ms. Spencer's remaining testimony may have been admissible as a prior consistent statement under Fed.R.Evid. 801(d)(1)(B). Appellants' objections on this ground were not models of legal argument, but they have made a sufficient objection to preserve the issue for appeal. Appellants argued for the admission of Ms. Spencer's testimony as follows:
 
 
 52
 THE COURT: ... And it's my opinion that this may well have been a spontaneous reaction to what occurred at the house, but that sufficient time apparently had elapsed that the statement may very well be the result of reflective thought as to what happened at the site of the automobile collision.
 
 
 53
 I will therefore permit Ms. Spencer to testify, with the understanding that her testimony is limited to the statements of Mr. Sprigg as they relate to the incident at the house. And I'm likewise aware that this is a very technical consideration of Rule 803, subsection 2, and that I propose to advise the jury that her testimony must be considered as limited to the events that occurred at the house. Very well.
 
 
 54
 APPELLANTS' COUNSEL: Your Honor, may I just make a comment?
 
 
 55
 THE COURT: Feel free.
 
 
 56
 APPELLANTS' COUNSEL: I just wanted the record to be clear, and I respect the court's thoughtful opinion on this matter. But our position is, of course, 803(2) is the main basis.
 
 
 57
 THE COURT: Oh, indeed. That's the problem.
 
 
 58
 APPELLANTS' COUNSEL: We also wanted to argue 803(2) [sic] for the residual hearsay exception.
 
 
 59
 THE COURT: Well, that is the escape hatch for a judge who can't figure out anything else. Is the probative value, does it exceed the prejudicial effect? And I would advise you from time to time I have used that way out. I don't think it's necessary in this case.
 
 
 60
 APPELLANTS' COUNSEL: And the third prong of our position is, of course, the recent fabrication suggestion in cross-examination [of Mr. Sprigg]. Our view is that the door is now open because he immediately complained to this witness; therefore, he could not have fabricated it later on when he found out that Jeff Elder was going to be arrested.
 
 
 61
 THE COURT: Well, the testimony is what it is. It's a question of credibility. I'm going to leave that completely to the jury. My only observation is the limitations of the excited utterance and who is making the excited utterance.
 
 
 62
 When the defendants' counsel cross-examined Sprigg, she questioned him about his strained relationship with the police department, the arrest of his friend Jeff Elder, and his desire to "get back at" Officer Treadway for stealing his sunglasses. By charging that Sprigg had fabricated his story to get revenge on Officer Treadway and the police, defense counsel's questions opened the door for admission of a prior consistent statement. It is unclear from this record, however, whether the motive to fabricate arose after Sprigg made the allegedly consistent statement, as required for the statements to be admissible under 801(d)(1)(B). Tome v. United States, --- U.S. ----, ----, 115 S.Ct. 696, 705, 130 L.Ed.2d 574 (1995) (Rule 801(d)(1)(B) "permits the introduction of a declarant's consistent out-of-court statements to rebut a charge of recent fabrication or improper influence or motive only when those statements were made before the charged recent fabrication of improper influence or motive.") This consideration of the Tome analysis should be made initially by the district court.
 
 
 63
 C. The District Court's Ruling Concerning The Testimony Of Prosecutor Kamenish.
 
 
 64
 Sprigg testified that he complained to Prosecutor Kamenish several times about the officers' "party atmosphere, their rowdiness, just the way they were unorganized." Kamenish testified that Sprigg complained to him only about his hatred of Officer Treadway. This was proper impeachment under Fed.R.Evid. 613(b) because Sprigg had been afforded an opportunity to explain his complaints to Kamenish. The district court did not abuse its discretion in admitting Kamenish's testimony.
 
 
 65
 D. Appellants' Challenge For Cause To Juror Hufft, Whose Uncles Were DEA Agents.
 
 
 66
 Appellants challenged Juror Anita Hufft for cause on the basis of "implied bias" because two of her uncles were Drug Enforcement Administration ("DEA") agents. The court had conducted voir dire of Ms. Hufft, during which she stated that the fact that her relatives were DEA agents would not influence her decision. The district court denied the appellants' challenge for cause. Appellants had four peremptory challenges, which they used to strike other venirepersons.
 
 
 67
 In reviewing a district court's decision to deny a challenge to a juror for cause, an appellate court is not to decide whether it would have made the same determination, but whether the district court abused its discretion. Marks v. Shell Oil Co., 895 F.2d 1128, 1129 (6th Cir.1990). The challenging party bears the burden of persuading the court that the juror is partial and subject to being excused for cause. Id.
 
 
 68
 Appellants argue that Ms. Hufft should have been excused for cause because Ms. Hufft's statements that she would not be affected by her relationship with DEA agents are not dispositive on a causal challenge and because family relationships with law enforcement agents are grounds for causal challenge due to implied bias or the appearance of bias. Appellants cite many state court cases in which jurors were excused for cause either because they were employed in law enforcement agencies or were related to law enforcement officials. However, those cases generally involved employment by or relation to the law enforcement agencies involved in the case itself. In this case, the police officers were from the City of Louisville police and the Kentucky State Police. Juror Hufft's relatives were federal drug enforcement agents.
 
 
 69
 Juror Hufft's DEA-agent relatives do not automatically disqualify her to sit on the jury. Brogdon v. Butler, 838 F.2d 776, 778 n. 1 (5th Cir.1988) (not abuse of discretion to deny causal challenge to juror whose husband was law enforcement officer). It was not an abuse of discretion for the district judge to credit Juror Hufft's answers to the voir dire questions, particularly since he was in a position to assess her credibility and impartiality. See United States v. Beasley, 48 F.3d 262, 267 (7th Cir.1995) (not an abuse of discretion for trial judge to deny causal challenge to juror whose son and brother were law enforcement employees when judge questioned juror on voir dire).
 
 
 70
 Here there was no showing of the depth of the family relationship or any particular reasons for disqualification beyond the mere relationship itself. To require a district judge to disqualify juror Hufft for cause in this case would amount to a per se requirement that any juror with a family relationship with law enforcement must be disqualified. This we refuse to do. See Beasley, 48 F.3d at 267 n. 4. Thus, the district court did not abuse its discretion by denying appellants' causal challenge.
 
 
 71
 E. Relation Back Of The Amended Complaint Adding New Police Officer Defendants.
 
 
 72
 Appellants also complain that the district court erred in granting the motion to dismiss filed by four police officers named in the amended complaint. The alleged incidents of excessive force took place on June 20, 1990. Appellants filed their original complaint on June 18, 1991. In that complaint, they sued "unnamed police officers" of the City of Louisville and the Kentucky State Police. The statute of limitations for appellants' claim, which is one year, expired on June 20, 1991. K.R.S. § 413.140(1)(a); Collard v. Kentucky Board of Nursing, 896 F.2d 179, 182 (6th Cir.1990) (§ 1983 actions in Kentucky are limited by the one-year statute of limitations found in § 413.140(1)(a)). Appellants filed an amended complaint on March 30, 1992, in which they named officers Wilson, Assef, Hyland, and Timmons as additional defendants. These newly named officers moved to dismiss the amended complaint against them as barred by the statute of limitations, and the district court granted their motion.
 
 
 73
 Under the version of Rule 15(c) of the Federal Rules of Civil Procedure in effect at the time appellants' original complaint was filed, defendants were required to receive actual or constructive notice of a lawsuit before the expiration of the statute of limitations in order for an amended complaint to relate back to the filing of an original complaint. Schiavone v. Fortune, 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986). Under the new version of Rule 15(c) that became effective on December 1, 1991, defendants must receive actual or constructive notice of the lawsuit within the period provided for service of the summons and complaint. Rule 4 requires service to be made within 120 days after the filing of the complaint.
 
 
 74
 Appellants argue that the court erred in granting the newly named officers' motion because the amended complaint relates back to the filing of the original complaint under Fed.R.Civ.P. 15(c)(3). Appellants contend that the newly named defendants in this case at a minimum had constructive notice of this lawsuit within the 120-day service period. Appellants also assert that the amended version of Rule 15(c)(3), which became effective on December 1, 1991, should apply to their case.
 
 
 75
 Appellants' amended complaint does not relate back. Sixth Circuit precedent clearly holds that new parties may not be added after the statute of limitations has run, and that such amendments do not satisfy the "mistaken identity" requirement of Rule 15(c)(3)(B). In re Kent Holland Die Casting & Plating, Inc., 928 F.2d 1448, 1449-50 (6th Cir.1991); Marlowe v. Fisher Body, 489 F.2d 1057, 1064 (6th Cir.1973). The amendment attempted by appellants clearly adds new parties to the complaint.
 
 
 76
 The naming of "unknown police officers" in the original complaint does not save the pleading. Substituting a named defendant for a "John Doe" defendant is considered a change in parties, not a mere substitution of parties. Therefore, the requirements of Fed.R.Civ.P. 15(c) must be met in order for the amendment adding the named defendant to relate back to the filing of the original complaint. In Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1075 (2d Cir.1993), the Second Circuit stated:
 
 
 77
 It is familiar law that "John Doe" pleadings cannot be used to circumvent statutes of limitations, because replacing a "John Doe" with a named party in effect constitutes a change in the party sued. Such an amendment may only be accomplished when all of the specifications of Fed.R.Civ.P. 15(c) are met.
 
 
 78
 (citations omitted). Accord Bufalino v. Michigan Bell Telephone Co., 404 F.2d 1023, 1028 (6th Cir.1968), cert. denied, 394 U.S. 987, 89 S.Ct. 1468, 22 L.Ed.2d 763 (1969) (action not commenced against "John Doe" defendants named in original complaint until Does identified and served with process).
 
 
 79
 Finally, appellants cannot benefit from the "imputed knowledge" doctrine of Berndt v. Tennessee, 796 F.2d 879 (6th Cir.1986), because the City of Louisville was never named as a defendant in this case. In Berndt, knowledge was imputed to the newly added defendants because they were officials of the originally named defendant, the State of Tennessee.
 
 
 80
 F. The District Court's Rulings Concerning Testimony About Alcohol Consumption By Certain Officers.
 
 
 81
 Appellants proffered testimony by Sprigg and Spencer that officers Hanka and Winstead drank six beers that Spencer offered them at about 8:30 p.m. on June 20, 1990. Appellants offered this evidence as "relevant to [the officers'] ability to perceive." When Sprigg attempted to testify about the beer, appellees objected and the court sustained the objection. The court rejected appellants' argument that the drinking was relevant to the officers' ability to perceive and instructed the jury that whether or not the officers were "partying or drinking" was immaterial to the issue before the jury, which was whether excessive force was used.
 
 
 82
 Appellate courts review evidentiary rulings on the relevance and materiality of evidence for abuse of discretion. Geisler v. Folsom, 735 F.2d 991, 997 (6th Cir.1984). The district court's exclusion of this evidence was an abuse of discretion. The evidence was plainly relevant to the officers' ability to perceive and to the officers' tendency to overreact to the events of the evening. Nonetheless, the district court's error on this issue was not reversible error because the excluded testimony was unlikely to have a significant effect on the outcome of the trial.
 
 IV. CONCLUSION
 
 83
 For the reasons stated above, in Parts I, II B-D, and III A, C-F, and for the reasons stated in the following opinion of Judge Ryan which is joined by Judge Batchelder, the district court's judgment is AFFIRMED.
 
 
 84
 RYAN, Circuit Judge, concurring in part.
 
 I.
 
 85
 I respectfully disagree with Judge Moore's treatment of the use of force instruction in part II-A of her opinion. In Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court unambiguously held that "all claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Id. at 395, 109 S.Ct. at 1871. The rule proposed in part II-A of the majority opinion would have left no room, as the Fourth Amendment and Graham require, for a reasonableness inquiry. Rather, it would have created a per se violation of the Fourth Amendment "after arrest" but before pretrial detention where "physical force" is used, regardless of the reasonableness of the use of force, or of the circumstances leading to the use of force.
 
 
 86
 The problem with this approach is two-fold. The first is that it is unconstitutional. Any claim alleging a violation of the Fourth Amendment must include an inquiry into the reasonableness of the action taken. The Fourth Amendment protects a citizen from the "unreasonable" seizure of his person. Thus, by definition, a "reasonable" use of force in the constitutional sense, is not a violation of the Fourth Amendment. Whether an action is "reasonable" in the Fourth Amendment sense, can only be analyzed by weighing and balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396, 109 S.Ct. at 1871 (internal quotation marks and citations omitted). Concomitantly, such a determination can only be made by looking at the totality of the circumstances. Indeed, the test of reasonableness used under the Fourth Amendment is incapable of precise definition or of mechanical application. Id. There is no such thing as a per se violation of the Fourth Amendment.
 
 
 87
 Second, creating a different Fourth Amendment standard applicable to the use of force in a post-arrest situation than is applicable to pre-arrest conduct, introduces a distinction in the meaning of the Fourth Amendment that is found nowhere in its language and is patently result-oriented. This approach is as problematic as it is disingenuous. Graham's "in the course of an arrest" requirement does not have an inherent ending point. The determination of when an arrest ends and "custody" begins is a question that must be answered by looking at the totality of the circumstances in each case.
 
 
 88
 In this case there are no facts to indicate the precise point at which the "arrest" was over and "pretrial detention" began. We have previously held that the seizure that occurs during an arrest continues, for Fourth Amendment purposes, throughout the time the suspect remains in the custody of the arresting officers. McDowell v. Rogers, 863 F.2d 1302, 1306 (6th Cir.1988). The majority opinion cites McDowell for the proposition that there is no need to apply force once a suspect is handcuffed. However, the court in McDowell was not crystallizing the facts of that case to transform them into a per se Fourth Amendment rule.[1] Rather, the court explicitly engaged in a "reasonableness" inquiry and determined that the force applied in that particular case was unreasonable.
 
 
 89
 The force that was used in the process of arresting Cox may have been unreasonable under the Fourth Amendment. But the law requires us to judge any claims alleging a violation of a constitutional right by reference to the specific constitutional standard that governs that right, rather than by some "generalized 'excessive force' standard." Graham, 490 U.S. at 394, 109 S.Ct. at 1871. The court's effort to add modifying clauses to its black letter rule defining just when the Fourth Amendment is violated in order to cover all the exceptions it can think of is doomed to failure. The test is reasonableness in the circumstances, and the opinion's listing of modifiers cannot succeed in covering all of them.
 
 
 90
 In my judgment, it is impermissible for this court to create an entirely new standard that reads the hallowed reasonableness standard out of the Fourth Amendment to be applied in hypothetically conjured post-arrest, pretrial detention cases.
 
 
 91
 And so, I respectfully disagree with the analysis and resolution of the instructional issue discussed in part II-A of Judge Moore's opinion. I therefore find no basis for reversal.
 
 II.
 
 92
 I agree with Judge Moore's treatment in part III-B of her opinion of the issue concerning the legal standards governing the admissibility of police informant Sprigg's prior consistent statement.
 
 
 93
 Although I think Sprigg's statements, that the police "beat the hell out of them" and "kicked Cox and ... hit Burgan in the head with a gun," were admissible as prior consistent statements under Fed.R.Evid. 801(d)(1)(B), I do not think the trial court should be faulted for excluding them. As Judge Moore's opinion suggests, the plaintiff's primary rationale at trial for introducing Spencer's testimony concerning the statements is that they were excited utterances. Plainly they were not, and the trial court correctly rejected the evidence on that ground. Plaintiff's counsel's further statement to the court that "the third prong of our position," that the cross-examination of Sprigg suggested "recent fabrication," was far too abstruse to expect the court to recognize it as a claim that the evidence was now being offered as a prior consistent statement. It was not error for the trial court to fail to recognize that the statements were admissible on a ground never clearly identified by plaintiff's counsel either descriptively or by reference to the appropriate federal rule of evidence.
 
 
 94
 I concur in the resolution of the other issues discussed in the majority opinion, however, finding no basis for reversal and remand, I would affirm the judgment of the district court.
 
 
 
 [1]
 The other cases the majority opinion cites as authority supporting the creation of a new rule are inapplicable because they were all decided prior to Graham. Lewis v. Downs, 774 F.2d 711 (6th Cir.1985), involved a substantive due process, not Fourth Amendment, analysis