William R. WIGGINS, Plaintiff–Appellant,

v.

KIMBERLY–CLARK CORPORATION, Kendra Presley, and Jamey Grizzle, Defendants–Appellees.

No. 15–5240.

United States Court of Appeals, Sixth Circuit.

Feb. 10, 2016.

BEFORE: BATCHELDER and GRIFFIN, Circuit Judges; CARR, District Judge.*

* The Honorable James G. Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

CARR, District Judge.

Plaintiff William Wiggins, an employee of the defendant Kimberly–Clark Corporation's Loudon, Tennessee, mill, brought this suit, in which he alleged contract claims based on alleged violations of the company's alcohol policy and tort claims (intentional infliction of emotional distress/negligent infliction of emotional distress, invasion of privacy, negligence, false imprisonment, and misrepresentation) against Kimberly–Clark. He also alleged defamation, intentional infliction of emotional distress/negligent infliction of emotional distress, invasion of privacy and misrepresentation against two co-workers (whom he initially sued as a single, unidentified "Doe" defendant), Kendra Presley and Jamey Grizzle. He contended that the company compounded the effects of such distress by refusing to disclose who had complained about his alleged violation of the alcohol policy.

On the company's motion, the trial court dismissed the contract claims on the basis that the company's drug policy created no rights that plaintiff could enforce under state law. On entering its order of dismissal, the trial court also entered a scheduling order.

Thereafter, nearly two years after filing his original complaint, the plaintiff sought leave to file an amended complaint naming Presley and Grizzle. A Magistrate Judge, to whom the District Judge referred the motion, entered an order allowing the amendment. The District Judge rejected that decision, denied leave to amend, and granted summary judgment as to the remaining claims.

This appeal from the two orders of dismissal and denial of leave to amend followed.

## Background

The events giving rise to this suit began when defendant Presley, seeking, according to plaintiff, to harass him, falsely reported to defendant Grizzle that she had smelled alcohol on plaintiff's breath following a team meeting that routinely began the workday for plaintiff and his co-workers. This was a serious allegation, as Kimberly–Clark has a stringent no-alcohol policy.

Grizzle's follow-up to this report resulted in plaintiff's being transported to a local hospital. There, after he signed a consent form (fearing loss of his job if he refused to sign the form), he took a breath test to detect alcohol use. The result was a reading of 0.00.

Next, he had to provide a urine sample to detect drug use (though the original allegation was based on alleged smelling of alcohol on plaintiff's breath). That test involved a stranger's observation of the plaintiff's urinating into a cup in the men's room.

Afterwards plaintiff, despite the 0.00 breathalyzer reading and over his objection, was driven home. Pending receipt of the results of the urine test, the company placed him on suspension. Once those results came back negative, he was returned to work, where he was, at the time of the decisions below, continuing to work. On his return to work, he sought unsuccessfully to have the company tell him who had made the original allegation of alcohol use.

## Standard of Review

This court reviews a district court's dismissal under Fed.R.Civ.P. 12(b)(6) on a *de novo* basis. *E.g., Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir.2007). When doing so, this court applies the standards set forth in *Ashcroft v. Iqbal,* 556 U.S. 662,

678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).

Where, as here, a district court denies a motion for leave to amend a complaint because, even as amended, the complaint would not withstand a motion to dismiss, the standard of review is *de novo. Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir.2008).

This court reviews a district court's decision granting summary judgment *de novo. Smith Wholesale Co., Inc. v. R.J. Reynolds Tobacco, Co.*, 477 F.3d 854, 861 (6th Cir. 2007).

### Discussion

### A. Contract Claims

The gravamen of plaintiff's multiplicitous contract claims was that the company's handling of Presley's complaint short-circuited the steps set forth in its alcohol policy. That policy, plaintiff alleged, gave him enforceable contract rights.

The trial court did not err when it dismissed plaintiff's contract claims.

Under Tennessee law, an employer's policy vests contractual rights in an employee only if the policy contains specific language that expresses the company's intent to be bound contractually. *Smith v. Morris*, 778 S.W.2d 857, 858 (Tenn.Ct.App. 1988). Though otherwise formally stated and adopted, if the policy lacks "such guarantees or binding commitments, [it] will not constitute an employment contract." *Adcox v. SCT Prods.*, No. 01A01–9703–CV–00123, 1997 WL 638275, at *2 (Tenn. Ct.App. Oct. 17, 1997) (citing *Whittaker v. Care–More, Inc.*, 621 S.W.2d 395, 397 (Tenn.Ct.App.1981)).

■ The trial court found support for its correct conclusion that the company's protocol for enforcing its no-alcohol policy did not create contractual rights in Kimberly–Clark's Code of Conduct, of which the policy was a part. The Code expressly disavowed any intent to create a contract:

> The information in this Code of Conduct has been prepared as a guide to give a better understanding of Kimberly–Clark and its expectations for ethical conduct. However, the statements in this Code of Conduct are statements of principle and do not constitute a contract of any kind or an inflexible set of rules. Management reserves the right, at all times, to take any action deemed by it to be in the best interests of Kimberly–Clark.

(Pl.'s Dep. Ex., RE 59–2, Page ID # 1007.)

Moreover, nothing in the testing protocol suggests any intent on the company's part to create a contract. Instead, the protocol states its purpose is "to assist in determining if a For–Cause test is warranted and how to accomplish it." As in *MacDougal v. Sears, Roebuck & Co.*, 624 F.Supp. 756, 759 (E.D.Tenn.1985), the company's protocol was simply a "unilateral expression of company policy" and therefore not a contractual term of employment. At most, the policy tells the company's managers when and how to test: it is a guide, not a command, much less a mutually binding commitment. Such guidelines do not create contractual obligations. *Rose v. Tipton County Public Works Dep't*, 953 S.W.2d 690, 693–94 (Tenn.Ct.App.1997) (handbook provision regarding progressive discipline did not constitute employment contract, where language of provision stated rules were intended to "guide" employee conduct).

The company's Code of Conduct was clear: by its own terms nothing in the Code endowed plaintiff or any other em-

ployee with enforceable rights. Tennessee law is just as clear: in the face of such disclaimer, no rights exist.[1]

The same is true with regard to plaintiff's contention that a binding oral agreement existed between him and the company. He points to no facts indicating that the company intended, no matter what any employee may have told plaintiff, to extend binding rights to him. Absent such express intent, oral commitments engender no enforceable rights. *See Klosterman Dev. Corp. v. Outlaw Aircraft Sales, Inc.,* 102 S.W.3d 621, 635 (Tenn.Ct.App.2002) (oral undertaking, to be enforceable, "must result from a meeting of the minds in mutual assent . . . and must be sufficiently definite to be enforced.").[2]

In sum, none of plaintiff's seven contract claims, no matter how framed or formed, withstands scrutiny under basic doctrines applicable to employers and employees. The trial court, applying those doctrines to the factual allegations of the complaint, correctly found that none of plaintiff's contract claims stated a cause of action.

## B. Denial of Motion for Leave to Amend

The district court, in ruling on the defendants' objection to the Magistrate Judge's order granting leave to amend, properly rejected that order and did not allow the amendment.[3]

As listed above, plaintiff's original complaint included several tort causes of action against Kimberly–Clark and the "John Doe" defendant. The motion to amend sought to name Presley and Grizzle in place of the "Doe" defendant and reformulate the tort claims as defamation, intentional infliction of emotional distress/negligent infliction of emotional distress, invasion of privacy, and misrepresentation.

Leave to amend a complaint is only appropriate "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant . . . [or] *futility of the amendment.*" *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (emphasis supplied). An amendment would be futile "when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun County,* 408 F.3d 803, 817 (6th Cir.2005).

The Sixth Circuit treats naming a specific individual in place of a John Doe as joinder of a new party. *See Cox v. Treadway,* 75 F.3d 230, 240 (6th Cir.1996) ("Sub-

---

**1.** Plaintiff claims he should have had a chance to conduct discovery relating to his execution of the consent-to-testing form. To the extent he has not waived his contentions in this regard by failing to raise them in the trial court, they are without merit. The form on its own did not create any contract rights (nor, as plaintiff inconsistently argues, was it an unenforceable condition to his continued employment).

These contentions, in any event, bear no relationship, and certainly no material relationship, to the issues before the trial court and this court. No amount of discovery of any sort would have altered the express terms of the Code of Conduct. The trial court's rejection of plaintiff's demand that it hold off on deciding the company's motion to dismiss while he took (meaningless) discovery was entirely proper.

**2.** The district court properly rejected plaintiff's contentions, not found in his complaint, that company officials made oral commitments or guarantees regarding the testing, thereby extending enforceable rights. Even if this court were to consider those contentions on their merits, it must deem them without binding effect for failing to manifest and express intent to be bound contractually.

**3.** We agree with the District Judge that the Magistrate Judge's order was dispositive in nature and thus *de novo* review, rather than review for an abuse of discretion, was proper.

stituting a named defendant for a 'John Doe' defendant is considered a change in parties, not a mere substitution of parties.").

■ Plaintiff's motion to amend came after expiration of the statutes of limitation applicable to all those claims except plaintiff's claim of misrepresentation. To avoid the limitations bar on all but that one claim, the plaintiff had to satisfy the requirements of Fed.R.Civ.P. 15(c)(1)(C). *Brown v. Cuyahoga County.*, 517 Fed. Appx. 431, 433 (6th Cir.2013) (citing *Smith v. City of Akron*, 476 Fed.Appx. 67, 69 (6th Cir.2012)). To do so under that Rule, so that the claims against Presley and Grizzle relate back to the original filing date (and thus come within the statute of limitations), requires showing that the newly named defendants: (1) "received such notice of the action that [they] will not be prejudiced in defending on the merits"; and (2) "knew or should have known that the action would have been brought against [them], *but for a mistake* concerning the proper party's identity." Fed. R.Civ.P. 15(c)(1)(C)(i), (ii) (emphasis supplied).

Plaintiff failed to satisfy these requirements. Even if he had established that Presley and Grizzle "knew or should have known" that he would bring the claims against them, he failed to establish that his lack of knowledge of their identities was due to a "mistake" as the Rule requires. *See Brown*, 517 Fed.Appx. at 433–34; *Smith*, 476 Fed.Appx. at 69 (noting relation back for "mistake" not allowable where newly named defendants was among John Doe defendants).

Here, as in *Smith*, the plaintiff "did not make a mistake about the identity of the parties he intended to sue; he did not know who they were and … did not find out within the … limitations period." *Id.* In reaching this conclusion, *Smith* followed

longstanding precedent. *See, e.g., Treadway*, 75 F.3d at 240 ("Sixth Circuit precedent clearly holds that new parties may not be added after the statute of limitations has run, and that such amendments do not satisfy the 'mistaken identity' requirement of Rule 15.").

Plaintiff complains about the company's refusal to identify Presley as the informant. As long as the dispute was internal, the company could have and did assert a policy of nondisclosure. Such policy helps uphold the no-alcohol policy by giving fellow workers confidence that, if they observe a violation, or what they believe is a violation of the policy, they can, to protect their own safety and that of others, notify the company without jeopardizing their relationships with their co-workers.

Once he filed suit, plaintiff had ample means at hand to learn who the responsible individuals were and join them before the statutes ran.

Plaintiff tries to avoid this result by arguing that he was unable to learn the identities due to their being fraudulently concealed, which requires tolling of the limitations periods. But he makes his tolling argument for the first time on appeal, and thus this court must disregard that contention as waived. *See, e.g., U.S. v. Universal Management Services, Inc.*, 191 F.3d 750, 758–59 (6th Cir.1999).

In any event, to have the statute of limitations tolled, the plaintiff would have to show that he diligently sought to ascertain the defendants' identities. He simply cannot do so, given the fact that his effort to seek discovery and obtain leave to amend came on the eve of the expiration of the court's scheduled pretrial period. *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 462–63 (Tenn. 2012).

Here, the record shows that plaintiff had ample time before the statute of limitations ran to learn the individual defendants' identities. As already noted with regard to his complaints about not being able to learn who they were, he had the tools at hand, once he filed suit, to pry that information out of the company. He neglected even to try to pick up those tools until the last minute.

Finally, with regard to plaintiff's non-barred claim—for misrepresentation—dismissal was also appropriate. Plaintiff bases this claim on the proposition that the protocol contained statements about its implementation on which plaintiff relied. Among the problems with this claim is that Kimberly–Clark, not the individual defendants, created the policy and its contents. Moreover, there is only a conclusory assertion relating to that element of the tort in Tennessee. *See generally Hodge v. Craig,* 382 S.W.3d 325, 343 (Tenn.2012) (stating elements of misrepresentation). Though plaintiff asserted this claim within the applicable statute of limitations, allowing it to proceed, in light of the flawed manner in which it was pleaded, would have been futile.

In sum, the lower court acted properly when it refused to allow the plaintiff to amend his complaint, as any such amendment would have been futile.

## C. Remaining Claim

Once the district court had dismissed the contract claims against Kimberly–Clark and thereafter denied leave to amend, all that remained were state tort claims against the individual defendants, namely: (1) defamation; (2) intentional infliction of emotional distress/negligent infliction of emotional distress; (3) invasion of privacy; (4) negligence; (5) false imprisonment; and (6) misrepresentation.

Tennessee law views all of these as personal injury claims. In that state, pursuant to Tenn.Code Ann. § 50–6–108(a), the workers compensation fund (except in cases of employer intentional torts)[4] provides the exclusive remedy for workplace injuries: "The rights and remedies granted to an employee subject to this chapter, on account of personal injury ... shall exclude all other rights and remedies of the employee."

In light of this provision, the trial court properly held that plaintiff could not seek to recover *via* state law tort claims. As the court stated in *Valencia v. Freeland & Lemm Constr. Co.,* 108 S.W.3d 239, 242 (Tenn.2003), reciting black-letter Tennessee law, the workers' compensation statute "provides the exclusive remedy for an employee who is injured during the course and scope of his employment, meaning the employee is precluded from seeking tort damages for the injury."

We agree that the undisputed facts justified the grant of summary judgment in favor the defendants.

## Conclusion

For the foregoing reasons, we find no error whatsoever in the trial court's deci-

---

4. Despite plaintiff's efforts to puff up the events, his claims are garden-variety tort claims, rather than rising to the rarified level of intentional torts. To reach that level, a plaintiff must allege actual intent (and do so with plausible specificity under *Twombly/Iqbal*) to survive dismissal. Mere assertion of that degree of desire to injure is not enough: plaintiffs "cannot avoid the exclusive remedy provisions of the workers' compensation act simply by labeling their causes of action" as intentional torts. *Rodgers v. GCA Services Group, Inc.,* No. W2012–01173–COA–R3–CV, 2013 WL 543828, at *9 (Tenn.Ct.App.). This requires "*alleged facts* constituting an actual intent to bring about the injury." *Id.,* at *7 (emphasis supplied).

sions in this case; accordingly, we AF-FIRM the judgments of the district court.